STATE of Tennessee, Appellant,

v.

Hugh MELSON, Appellee.

Supreme Court of Tennessee,
at Jackson.

May 15, 1989.

Rehearing Overruled June 12, 1989.

W. J. Michael Cody, Atty. Gen. and Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, for appellant.

Susan L. Kay, Vanderbilt Legal Clinic, Nashville, for appellee.

## OPINION

HARBISON, Justice.

Appellee was convicted of murder in the first degree and sentenced to death. The judgment was affirmed by this Court, *State v. Melson*, 638 S.W.2d 342 (Tenn. 1982). The Supreme Court of the United States denied review. *Melson v. Tennessee*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Thereafter counsel for appellee filed a petition for writ of error *coram nobis* which was denied by the trial court after an evidentiary hearing. The Court of Criminal Appeals affirmed that decision, and both this Court and the Supreme Court of the United States denied review. *See Melson v. Tennessee*, 469 U.S. 1066, 105 S.Ct. 549, 83 L.Ed.2d 436 (1984).

Thereafter a post-conviction petition was filed in the trial court by different counsel. The petition is some forty-two pages in length and presented all of the issues which were raised at the original trial and appeal together with some additional legal questions. The trial judge dismissed all of the allegations of the post-conviction petition except those pertaining to the alleged ineffectiveness of the two attorneys who tried the original case, conducted its appeal, and then tried and conducted the appeal of the writ of error *coram nobis* proceedings.

The trial judge held an evidentiary hearing on the question of the ineffectiveness of trial counsel. He found no evidence to support such a claim. The Court of Criminal Appeals affirmed as to all of the claims of ineffectiveness except one dealing with the failure of original trial counsel to offer any evidence at the sentencing hearing. In a divided decision a majority of the Court of Criminal Appeals held that the failure to offer evidence at the sentencing hearing constituted ineffectiveness within the constitutional meaning of that term. It ordered a new sentencing hearing.

We have examined in depth both the original trial record and that compiled at the post-conviction hearing. In our opinion the Court of Criminal Appeals was in error.

Its decision is reversed and the post-conviction petition is dismissed.

As pointed out by the Court of Criminal Appeals, evidence of appellee's guilt was overwhelming. Appellee was convicted of one of the most brutal, horrifying and atrocious murders which have come before the courts of this State. He bludgeoned to death with a ball-peen hammer a fifty-two year old housewife who had caught him in the act of stealing gasoline from his employer, her husband. Appellee had been a long-time farm resident and employee of the Lawrence family in Madison County. Because gasoline and other items had been disappearing from inventory, in about March 1980, Mr. Lawrence had placed a control, or switch, on the farm gasoline pumps. This control was inside the house, and any person drawing gasoline was supposed to clear with Mr. Lawrence or someone else in authority and have a record made of the amount of gasoline pumped.

On the morning of April 10, 1980, Mr. Lawrence and one of his sons had gone fishing. Mrs. Lawrence inadvertently discovered that appellee had turned on the pump switch and had withdrawn gasoline without permission. She and he had an angry confrontation, and later in the day appellee made threats that Mrs. Lawrence must not be permitted to report to her husband what she had discovered. Appellee stated to several witnesses that he was in deep trouble because of this incident.

The evidence clearly established that appellee bludgeoned Mrs. Lawrence to death inside her kitchen, striking her some twenty or more times with a ball-peen hammer, crushing her skull and inflicting other injuries. Her blood was found on his clothing as well as on the hammer which was later found in a tool kit in appellee's pick-up truck. Appellee did not testify at the guilt phase of his original trial, at the sentencing phase or on the post-conviction hearing. Despite the numerous errors alleged in the post-conviction petition, there has never been any contention that trial counsel erred in their decision not to have Mr. Melson testify at any of these hearings. Certainly

this Court does not suggest that any other course should have been pursued.

During the course of the original trial there was uncontradicted evidence offered, not only through character witnesses called for appellee but through cross-examination of State's witnesses, that Mr. Melson was a quiet, temperate, sober worker who had been employed on the Lawrence family farm for many years. His reputation for non-violence and peacefulness was established without impeachment, contradiction or question. Through various witnesses it was brought out that he had served honorably in the Navy for four years after World War II. His lack of any significant criminal history was developed clearly. At the guilt phase of the trial he was permitted to call an expert witness, a professional psychological examiner, who testified that Mr. Melson had no personality or mental disorders, that he was well adjusted, and that he showed no characteristics of anti-social, violent or other inappropriate behavior. In addition, appellee was permitted to call eight character witnesses at the guilt phase, including his wife, his mother, his daughter, the sheriff of the county and numerous others, all of whom testified, without contradiction or impeachment, to his reputation for peacefulness and quietude. In addition, a number of these witnesses testified to his high school activities, his military service, the warmth of his friendship, and his good relations with the Lawrence family and his own family as well as with his neighbors and friends in the community. Further, the sheriff testified that Mr. Melson had been a model prisoner during the time of his confinement since his arrest for the charges in question.

In the face of this testimony, it was argued strenuously at the post-conviction hearing that counsel for appellee were ineffective for not recalling, during the penalty phase of appellee's trial, three of the foregoing persons and six other neighbors, relatives or friends who could have testified to the very same things which had already been proved in evidence at the guilt phase.[1]

1. The post-conviction record is replete with ex-    amples of what this testimony would have been.

This was the only basis upon which the Court of Criminal Appeals found that counsel were ineffective. We respectfully disagree with that conclusion. We concur with the opinion of the trial judge and that of the dissenting member of the Court of Criminal Appeals that the decision made by counsel was a strategic or tactical one which was fully justified and supportable under the circumstances of the case. *See Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982).

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) mandates a two-pronged analysis of claims of ineffective assistance of counsel. Based on the Supreme Court's understanding of the proper function of the "adversarial process" the Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 686, 104 S.Ct. at 2064; *see Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975).[2]

Herein the Court of Criminal Appeals found that counsel's failure to present evidence in the sentencing phase of appellee's trial was not a "reasonable exercise of trial tactics" and, thus, rendered counsel's representation ineffective under the Sixth Amendment. Nothing was adduced at the post-conviction hearing by way of mitigation which, in our opinion, could possibly have added anything to that which was already in the trial record before the jury at the guilt phase of the original trial. The testimony offered at the post-conviction hearing was, at most, cumulative and, in our opinion, was probative of absolutely nothing which could have affected the verdict in this case. As against the uncontradicted testimony of appellee's non-violent disposition, his good family relations, and all of the other testimony about his personal habits, the jury at the sentencing phase of the case had before it testimony offered by witnesses for the State that appellee had committed this most brutal and heinous murder in order to prevent Mrs. Lawrence from communicating to her husband the theft of gasoline in which he had been apprehended by her.

Appellee was represented at the original trial by two attorneys, one of whom was fairly inexperienced in the handling of homicide cases. The other, however, had handled numerous homicide cases, including four involving the death penalty. The latter testified at the post-conviction hearing that he was not aware of any evidence available at the sentencing hearing which would have added anything significant to that which was already in the trial record. Our examination of the trial record convinces us that this decision was entirely correct. This attorney, like any other experienced trial attorney, was aware that when any witness is offered for direct examination, that witness is subject to cross examination. Counsel had already established, with little or no cross examination by the State, during the guilt phase of the trial all

Typical is that of Robert Melson, appellee's brother, who would have testified that Hugh was a "quiet family man" who "worked hard" and provided for his family.

**2.** Appellees suggest that the prejudice prong of *Strickland* may not apply to claims of ineffective assistance of counsel under Art I, section 9 of the Tennessee Constitution. We do not interpret the Tennessee constitutional provision as being different from the federal in this respect. *See State v. Matson,* 729 S.W.2d 281 (Tenn.Crim. App.1986), app. denied March 9, 1987; *State v. Ash,* 729 S.W.2d 275 (Tenn.Crim.App.1986) app. denied March 9, 1987. *Baxter v. Rose,* 523 S.W.2d at 936.

that was suggested at the post-conviction hearing by way of mitigating circumstances. All nine witnesses called for appellee at trial focused upon his character and his reputation. To recall the same witnesses or to call cumulative witnesses on these subjects without any intervening evidence by the State would, in our opinion, have been useless. Further, the witnesses could have been subjected to vigorous cross-examination had the State desired to do so, and avenues for rebuttal evidence by the State could have been opened.

Given the apparent concession by counsel at the post-conviction hearing and the expert witness whom she called that there was no flaw in the decision of trial counsel in not calling appellee himself to the stand, in our opinion there was certainly no flaw in the decision to conclude the sentencing hearing without proof in view of the fact that the State had offered no additional evidence and that abundant mitigating evidence had been offered in the guilt phase. By statute, this evidence was also to be considered at the sentencing phase. T.C.A. § 39–2–203(e).

In the original opinion of this Court, which reviewed the trial proceedings at length, the Court noted that appellee "was represented by two very competent attorneys." 638 S.W.2d at 359. Counsel explored every legal question and every factual issue which apparently was open to them under the circumstances of the case, and pursued twice to the Supreme Court of the United States numerous legal issues seeking to overturn the conviction. The first prong of *Strickland* analysis requires that counsel make "reasonable" decisions regarding the conduct of his or her clients' defense. *Burger v. Kemp*, 483 U.S. 776, 789, n. 7, 107 S.Ct. 3114, 3123, n. 7, 97 L.Ed.2d 638, 654, n. 7 (1987). The Supreme Court of the United States has stated that judicial scrutiny of counsel's performance under the Sixth Amendment must be "highly deferential." *Strickland*, 466 U.S. at

689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Further, this Court has held that trial counsel will not be "second guessed" especially where decisions of a strategic or tactical nature are involved. *State v. Caldwell*, 671 S.W.2d 459 (Tenn.1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984). *See State v. Martin*, 627 S.W.2d 139 (Tenn.Crim.App.1982). We cannot say that counsel's decision to rely on the mitigating evidence presented during the guilt phase of appellee's trial was unreasonable. Appellee has not carried the requisite burden of proof under *Strickland*.

Also, in the original opinion this Court noted that the trial judge had gone beyond the requirement of the case law in charging the jury that they might consider any mitigating circumstance shown in evidence.[3] The trial judge did so instruct them, and rigorously confined their consideration of aggravating factors to the two which the State urged. In addition to listing the statutory mitigating circumstances, however, the trial judge specifically pointed out others, these being:

Hugh Melson served his country by service in the United States Navy as a radar technician for four years, from 1950 to 1953. He was honorably discharged.

The judge further called the attention of the jury to the fact that:

Hugh Melson has no *significant* history of prior criminal activity. (Emphasis in original transcript.)

The judge also instructed the jury that they might consider that:

Hugh Melson is a family man, who has been known as a peaceful, productive member of the community.

As stated, it was for failure of counsel to offer evidence of these mitigating factors at the sentencing hearing that the Court of Criminal Appeals found counsel to be ineffective. We simply cannot agree to that conclusion. These mitigating circumstances had been proved beyond doubt at the

---

**3.** *See* 638 S.W.2d at 368. The trial judge is not required to detail or delineate in jury instructions the non-statutory mitigating circumstances relied upon by the accused. *State v. Hartman*, 703 S.W.2d 106 (Tenn.1985), *cert. denied, Hartman v. Tennessee*, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986).

guilt phase, and there was no reason for counsel to call or to recall additional witnesses at a sentencing hearing to prove that which had already been established. Jurors are not presumed to be inattentive or to lack understanding. The instructions given by the trial judge practically mandated them to consider these three specific mitigating circumstances in addition to any others which counsel might deem to have been shown by evidence.

Numerous cases have been cited by the Court of Criminal Appeals and by counsel for appellee finding counsel ineffective for failure to offer proof at a sentencing hearing. In almost all of these cases, however, there had been no evidence of mitigating circumstances offered at the guilt phase, as had occurred in the present case. Here there was abundant evidence for the jury to make a particularized, individual decision focused upon this individual defendant and his personal characteristics and status. *See Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 2532, 96 L.Ed.2d 440 (1987). The decision of counsel not to offer the cumulative evidence suggested at the post-conviction hearing, in our opinion, was not erroneous, and in any event it could not have affected the verdict in this case.

There is no legal requirement and no established practice that the accused must offer evidence at a sentencing hearing. Our research indicates that in a large number of capital cases tried in this state, in addition to the instant case, defense counsel have seen fit not to offer any evidence at the sentencing phase of the trial. These include *State v. Poe,* 755 S.W.2d 41 (Tenn. 1988); *State v. Smith,* 755 S.W.2d 757 (Tenn.1988); *State v. Porterfield,* 746 S.W.2d 441 (Tenn.1988); *State v. Sparks,* 727 S.W.2d 480 (Tenn.1987); *State v. Carter,* 714 S.W.2d 241 (Tenn.1986); *State v. Barnes,* 703 S.W.2d 611 (Tenn.1985); *State v. Zagorski,* 701 S.W.2d 808 (Tenn.1985); *State v. Duncan,* 698 S.W.2d 63 (Tenn. 1985); *State v. Williams,* 690 S.W.2d 517 (Tenn.1985); *State v. Caldwell,* 671 S.W.2d 459 (Tenn.1984); *State v. Cone,* 665 S.W.2d 87 (Tenn.1984); *State v. Matson,* 666 S.W.2d 41 (Tenn.1984); *State v. Campbell,* 664 S.W.2d 281 (Tenn.1984); *State v.*

*Workman,* 667 S.W.2d 44 (Tenn.1984); *State v. Williams,* 657 S.W.2d 405 (Tenn. 1983); *State v. Austin,* 618 S.W.2d 738 (Tenn.1981) and *see also Cone v. State,* 747 S.W.2d 353, 356–357 (Tenn.Crim.App.1987) (issue as to presentation of no mitigating evidence presented on post conviction relief; Court found no ineffective assistance of counsel); app. den. March 14, 1988; *cert. denied,* —— U.S. ——, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

When appellee elected not to testify in this case and to leave unchallenged the devastating testimony of the family maid and a retired farm employee, the only plausible course open to his trial counsel was to offer mitigating testimony. They called nine witnesses for that purpose. Nothing that counsel did in this case, in our opinion, was responsible for the adverse verdict. The judgment of the jury was based upon the facts of the case. Diligent counsel did all that they reasonably could do under the circumstances.

It is fallacious automatically to attribute to "ineffectiveness" of counsel the fact that their efforts were unavailing or that a capital sentence was imposed. Counsel are required to exert every reasonable effort on behalf of a client both in the investigation and in the trial of a case. We find nothing in the post-conviction record to suggest that there was any failure of counsel to meet the standards of competence required in criminal cases or that any actions or inactions on their part in any way prejudiced the case of their client.

The judgment of the Court of Criminal Appeals is reversed insofar as it ordered a new sentencing hearing. The post-conviction petition is dismissed at the cost of appellee.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

### ORDER ON PETITION FOR REHEARING

A petition for rehearing has been filed on behalf of appellee. After consideration of the same, the Court is of the opinion that

the petition is not well taken. It is accordingly overruled at the cost of appellee.