# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2006

## WILLIE JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C03-462      Donald Allen, Judge**

---

### No. W2005-01722-CCA-R3-PC  - Filed December 15, 2006

---

The petitioner, Willie Johnson, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief from his conviction of burglary and theft over $500, for which he is serving eight years.  He was sentenced to eight years on the burglary conviction and four years for theft, to be served concurrently.  The petitioner claims he received ineffective assistance of counsel and argues that his attorney:  (1) failed to provide him a list of the grand jurors who indicted him, including their racial make-up; (2) failed to consult him on every peremptory challenge; (3) failed to advise him to testify on his own behalf; (4) failed to persuade him to wear something other than his prison uniform at trial; and (5) failed to fully investigate and interview the witnesses in his case. After careful review, we conclude that no basis to grant relief exists, and we affirm the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Willie Johnson.

Paul G. Summers, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

This court summarized the facts of this case on direct appeal:

The defendant's jury trial was held on June 26, 2001. The State called John Mann, Tony Concialdi, Jim Murdaugh, Officer James Randall Price, Officer David Knolton, Sergeant Ron Jackson, and Officer Randy Lampley to testify to the events surrounding the November 9, 1999 burglary of the Pesce Architecture Firm. At the conclusion of the State's case, the defense counsel moved for a Motion for Judgment of Acquittal. The trial court denied the defendant's Motion for Judgment of Acquittal, finding that sufficient proof existed placing the defendant in the area of the burglary and based upon eyewitness testimony. The defense called Wade Powell and recalled Tony Concialdi, Jim Murdaugh, and Officer James Randall Price.

John Mann, an architect with the Pesce Architecture Firm, testified to the circumstances of the November 9, 1999, burglary of his office building in downtown Jackson. He had locked the doors prior to leaving for lunch that day. After returning from lunch, he discovered that the outer and inner doors of his office building were ajar and wood chips were broken from the door trim. Once inside his office, he saw that approximately thirty computer discs, compact discs, and software were missing from his workspace. Mann stated that some pens from his desk were missing, as well as the cord from Jerry Pesce's Norelco shaver. During this time, he received a telephone call from someone at Ironworks, a business associated with his firm, inquiring about whether the Pesce Firm was missing a computer. He found that the laptop belonging to his employer, Jerry Pesce, was missing. Mann stated that he went to Ironworks and recovered the missing property. Mann stated that the Pesce Firm offices were accessible by doors located inside the building, as well as doors on the outside of the building. He stated that employees of an insurance company, located in the same building as the Pesce Firm, were the only people having access to the inner offices. Mr. Mann testified he did not know who could have committed the crime and stated that he did not know the defendant.

On cross-examination, Mann testified to what he discovered on the day of the burglary. He stated that the value of the music compact discs ranged from fifteen dollars to twenty dollars each. At the time of the theft, the laptop was worth approximately four thousand dollars, and each of the software computer discs were worth one hundred to two hundred dollars each. He stated that the stolen items belonged to the Pesce Firm and were purchased for business purposes. He stated that no damage was done to any of the items taken from his office. He also stated that it appeared as if someone used an object to chip the wood from the door frame. He stated that the police photographed the crime scene, but he did not remember telling them about the damage to the doors. He stated that he has worked for the Pesce Firm for six years.

On redirect, Mann stated that the outer door of the office sustained damage from the apparent forcible entry. He also stated that the Pesce Firm doors are located on the west and east side of the building and his office is located on the east side of the

building. He stated that the west side of the building houses the insurance company that he previously mentioned. He stated that if the west or east door is unlocked, one can make entry into the building and that he has access to his office from the east door or the west door.

Tony Concialdi, owner of Ornamental Iron and Construction, testified, as follows, regarding the incident at issue. Ornamental Iron and Construction, also known as Ironworks, is located in the downtown area of Jackson near the Pesce Firm. He stated that at approximately 12:30 to 1:00 p.m. on the day of the burglary, the defendant walked into Concialdi's office with a laptop computer and other items. Concialdi stated the defendant approached Concialdi and Jim Murdaugh, who was also present. He stated he remembered the defendant allowed him and Murdaugh to open and operate the laptop. He noticed that the [defendant] tried to plug a shaver cord into the computer. He stated that after the laptop was turned on, the screen flashed the words, "Pesce Firm," and required a password for further operation. He stated that he told the defendant that "you can't just turn it on and get in there." The defendant then told him to use the computer discs to gain access. He stated that he told the defendant that the computer was not accessible by only using the discs. He stated that he told the defendant that he did not think the laptop belonged to the defendant. After the defendant told him that he bought the laptop, Concialdi remembered responding to the defendant by saying, "Well, I don't know about that." The defendant then gathered the laptop and computer discs and left. He stated that Murdaugh then called the police. Concialdi identified the defendant as the person who attempted to sell him the laptop and discs.

On cross-examination, Concialdi reiterated his previous testimony. He stated that the defendant was the man who attempted to sell him the stolen items. He stated that, by the time the police arrived at his office, the defendant was gone. He described the perpetrator as a black male, approximately six feet tall, with a goatee. He stated that he told one of the officers that the perpetrator was a black male with a stubby beard and mustache. He described his office as the "old Goodyear building." He stated that he uses half of the old Goodyear showroom as his office and he uses the rest of the building for his shop. He stated that the lighting conditions in his office were sufficient to see the defendant from three feet away. He stated that the defendant stood directly across from him on the opposite side of his desk for approximately ten minutes. He positively identified the defendant as the same person who appeared in his office. On redirect, Concialdi testified that he has no doubt that he correctly identified the defendant as the perpetrator.

Jim Murdaugh testified that the defendant attempted to sell him the stolen goods on the day of the burglary. At the time of trial, he stated that he was employed as a certified real estate appraiser at an office on Main Street in Jackson. He stated that he was in Concialdi's office when he noticed the defendant walk up from the street

and then enter Ironworks, carrying a black laptop. He stated that the defendant asked the two men if they would be interested in buying his laptop for five hundred dollars ($ 500.00). He remembered telling the defendant to go into Concialdi's office so the men could ascertain whether the computer was in good condition. He stated that he observed the defendant demonstrate how to operate the computer. He stated that Concialdi and his son were in the office with him and the defendant. He remembered seeing the address of Jerry Pesce, Pesce Architects, printed on the front cover of the laptop case. He stated that the defendant attempted to plug in the computer with a Norelco shaver cord. He then asked the defendant to turn the computer on to see if the computer worked. He stated that the computer screen flashed a Windows screen, then flashed the words, "Pesce Architect Firm," before asking for a password. He stated he told the defendant to give them a password to demonstrate how the laptop operated, but the defendant did not have the password. Murdaugh stepped outside and called his wife, who is employed with the police department, to request police assistance and to report what was happening in Concialdi's office. He stated that he assumed that the defendant heard him make the call, because the defendant ran out the front door with the stolen goods. While gathering the laptop and discs, the defendant picked up a compact disc belonging to Concialdi. After making the call to his wife, Murdaugh called the Pesce Firm to see if they were missing a laptop computer. He stated that during the time that the police were apprehending the defendant, Mann came from the Pesce Firm to reclaim the laptop and other items. The police asked the men for a description of the perpetrator and, in less than thirty minutes, returned to Concialdi's shop with the defendant in their squad car. He reported to the police that the defendant was thin, with a goatee, and described what the defendant was wearing. He stated that all of the events happened during the lunch hour. He identified the defendant as the man who attempted to sell the stolen merchandise.

On cross-examination, Murdaugh testified to reporting the incident to the police. He gave the description of the perpetrator as thin, with a goatee. He remembered seeing three police officers on the scene. He stated that the defendant entered Ironworks from the direction of the grocery parking lot and walked through the first garage door positioned on the west side of the building. He stated that it alarmed him when he saw the defendant carrying a laptop as he passed alongside his truck because Murdaugh's laptop was inside his unlocked truck, parked between the garage door and the street, just outside Ironworks. He realized that the defendant did not look like a computer salesperson, but chose not to turn the defendant away because he wanted to determine whether the laptop was taken from his truck. He stated that when the defendant showed the men the Gateway computer with its screen flashing, "Pesce Architect Firm," he knew that it was not his laptop. He stated the defendant did not know how to turn the computer on, so Concialdi had to do this for him. He stated the defendant also tried to use a Norelco shaver cord on the computer. Because Murdaugh stepped around the corner of the office to discreetly use his cell

phone to call the police department and the Pesce Architect Firm, he did not see the defendant leave the building. He stated that he had an opportunity to see the defendant again in the back of the squad car. He remembered that the defendant was in the backseat, and the defendant was yelling obscenities at him. He recognized the person in the squad car as the same person who attempted to sell the men the laptop and other stolen items.

At this point in the trial, the defense counsel asked the jury to be excused, and the trial judge excused the jury. The defense counsel told the judge that the defendant was demanding that he ask witnesses questions that counsel felt were inappropriate. The trial judge addressed the defendant and asked the defendant what his contentions were in respect to witness questioning. The defendant stated that he wanted reports by witnesses read in full, not read in portions, so the jury could hear that the reports differed as to the description of the suspect. The trial judge asked the defendant to allow the defense counsel to ask questions on redirect, to recall witnesses, and to have the opportunity to make his argument before the jury. The trial judge also admonished the defendant for speaking so loudly. The defendant then announced to the trial judge and his counsel that, "I've got ya'll now. Ya'll want me out of here." The bailiff then told the defendant, "No. We just want you to sit down." The defendant replied that he "got the message," and he knew exactly what was "going on." The defense counsel asked the defendant if he wanted to be the lead attorney and question the witnesses. The defendant responded to his counsel by stating that he wanted to ask questions that counsel may not want to ask. The defense counsel again asked the defendant if he would like to take over the cross-examination and told him he could not "do it piecemeal." The trial judge responded to the exchange between the defense counsel and defendant by stating that the defense counsel would continue to represent the defendant and that the defendant may confer with his attorney. However, the defense counsel should only ask those questions which he felt were appropriate. The trial judge dismissed the court for a five-minute break.

Sergeant Ron Jackson testified to the events of November 9, 1999. He was working the day shift from 7:00 a.m. until 3:00 p.m., in the location of Lane Street from the Forked Deer River Bridge and east of Highland, when he received a call that a subject was trying to sell items that were probably stolen. He stated that he went to Ornamental Iron on East College and was given a description of the suspect. He remembered that one of the officers remained at the shop while he and another officer left to find the suspect. After Officer Knolton found the subject, he returned to Ornamental Iron. He stated that Officer Colon transported the subject back to Ornamental Iron for Concialdi and Murdaugh to identify the suspect in custody. He stated that Concialdi and Murdaugh positively identified the suspect as the man attempting to sell them the laptop and other items. He stated that he found the laptop computer inside a carrying case and a black plastic bag with software items inside the bag. He stated that Concialdi and Murdaugh identified the laptop computer as the

same one the suspect attempted to sell to them. He said that Officer Knolton was given the items to return to the owner, and the defendant was transported to the jail. He identified the defendant in the courtroom as the same man who was taken into custody on November 9, 1999. He stated that the items were found in an area located two blocks from Ornamental Iron and that he was not familiar with the location of the Pesce Architectural Firm. He stated that, on the day of the burglary, he searched for a tall, slender black male with a scraggly beard and black hair. He stated that at the time he received a description of the suspect, the owner of Ornamental Iron described the suspect as having a small goatee around his chin. As the District Sergeant, he made the decision not to have fingerprints taken from the items found in the dumpster. He testified that the BOLO from Officer Price described the suspect as a black male with a stubby beard, but Concialdi described the suspect as having a goatee and did not think the goatee description went out on a BOLO.

Officer James Randall Price, a police officer with the Jackson Police Department for twenty-two years, was called as a witness to present testimony as to the events of November 9, 1999. He testified that he went to Ornamental Ironworks in response to a call regarding items believed to be stolen. He stated that he spoke with Concialdi, the owner of Ornamental Iron, and Murdaugh and then made a report based upon the information given. He also stated that he dispatched the description of the suspect as a black male with a scruffy-looking beard and mustache. He said he remained at Ornamental Iron while other officers looked for the suspect. Approximately fifteen minutes passed before the suspect was brought back to Ornamental Iron for identification. He testified that he did not know the defendant prior to his arrest and positively identified the defendant in the courtroom as the same person the officers brought back to Ornamental Iron for identification purposes. He stated that he photographed the laptop and other items before the items were returned to the owner.

On cross-examination, Officer Price testified to the contents of his supplemental report. He stated that he wrote the original report. Concialdi told him that the suspect, a black male with a scrubby beard and mustache, came into his store and attempted to sell him a computer. After getting the description of the suspect, Price stated that he sent out a BOLO for a black male with a scrubby beard. He testified that the Jackson Police Department chose not to dust for fingerprints on the items retrieved from the dumpster. He stated that when an officer returned to Ornamental Iron with the defendant in the squad car, Murdaugh positively identified him as the man who attempted to sell him the laptop and other items.

After the trial judge released the jury for lunch, the defense counsel addressed problems that he was having with the defendant. The defense counsel told the judge that the defendant was asking him to do things that were impermissible. The trial judge dismissed the parties for lunch.

The State called Officer Randy Lampley, of the Jackson Police Department, as a witness. At the time of the trial, he stated that he was in charge of the Financial Crimes Unit of the Jackson Police Department. During November of 1999, he was in charge of the Property Crimes Section. Lampley positively identified the defendant in the courtroom as the same person he saw on November 10, 1999. He testified that on the day after the burglary, he went to the Pesce Firm to take pictures of the damage to the door facings and to speak to John Mann. He said that all of the property that was stolen on November 9, 1999, had been returned to Mann on the same day. He stated that the Pesce Architectural Firm is located halfway down Sycamore Street, Jackson, Tennessee, in an old railroad building that has been converted into downtown office buildings.

On cross-examination, Lampley testified that he did not ask Mann to identify the defendant from either a photo lineup or a live lineup. He stated that it was not unusual to return stolen items to the owner or to show the owner photos of stolen items for identification purposes. He testified that it was possible for fingerprints to have been lifted from the stolen items, but they did not dust for prints. On re-direct, Lampley stated that he was not directly involved with the stolen property on November 9, 1999.

The defense then called Wade Powell, owner and operator of Powell's Auto Shop on 425 North Royal Street in Jackson, to testify concerning his knowledge of the incident occurring on November 9, 1999. Powell stated that the defendant had been in his shop prior to his arrest and that the stolen items were found in a dumpster located approximately fifteen to twenty feet outside the back door of his shop. He told the police that the defendant would sometimes come in his shop, and he did not see the defendant with any of the stolen items on the day of his arrest.

On cross-examination, Powell testified that, although he was not sure of the time of day the defendant was in his shop, he thought it was sometime after nine o'clock in the morning. He stated that the defendant was in the auto shop for about ten to fifteen minutes. He said that when the defendant left the shop, he did not have anything in his possession, and he did not return until he was in police custody. He testified that when the stolen items were found, he was inside of his shop and was unaware that the police had found them in his dumpster. On redirect, Powell testified that he did not see the defendant until after the police arrested him that afternoon. He stated that his cousin was outside the shop on the day of the defendant's arrest.

The defense recalled Tony Concialdi. Concialdi stated that he did not give a signed written statement, but told Officer Price that a black male with a stubby beard and mustache attempted to sell him a laptop computer and several CDs. Concialdi stated that he was in his office when the defendant left the store. He also stated that he did not hold the defendant in the shop while Murdaugh used his cell phone or until

Murdaugh returned. He stated that the defendant appeared to get nervous and left the shop when Murdaugh went outside to use his phone. He said he noticed the defendant left, he also picked up some of Concialdi's CDs. On cross-examination, he stated that the CDs that the defendant picked up from his desk were returned when the police brought the other property to his shop.

Jim Murdaugh was recalled by the defense and testified that the defendant tried to sell the laptop computer to him for five hundred dollars ($ 500.00). The defense counsel read into the record the statement prepared by Officer Price and asked Murdaugh if the report was correct. He responded by stating that Officer Price's statement was correct. He stated that he talked with the defendant prior to his entering Concialdi's shop, but Officer Price did not include this in his report. He also stated that the defendant offered to sell him the laptop while he and the defendant were outside Concialdi's shop.

Officer Price was recalled by the defense counsel. He stated that he failed to include Murdaugh's statement regarding the defendant's offer to sell him the laptop for five hundred dollars ($ 500.00). He also stated that he did not have any reason to explain differences in Officer Knolton's description of the defendant and Concialdi's description. He stated that Concialdi told him that he had been in the office, walked out, and then returned to see the defendant head north on Hurt Street. He testified that his report was not written "word for word" to record the witnesses' statements, but was written from memory and from notes he made as witnesses reported to him.

On redirect, Officer Price testified that Concialdi originally gave a description of a suspect with a mustache and a stubby beard. He remembered that other officers came to the scene and dispatched the description over the radio. He said that Sergeant Jackson may have talked to Concialdi and received information from him as well. The defense counsel rested and renewed its Motion for Judgment of Acquittal. The trial court dismissed the motion and instructed the jury.

State v. Willie Johnson, No. W2001-02929-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 35, at **1-8 (Tenn. Crim. App. Jan 14, 2003), perm. app. denied (Tenn. Jul. 7, 2003).

At the post-conviction hearing, trial counsel testified that he was appointed to represent the petitioner on May 4, 2001, after a conflict was discovered with the petitioner and the public defender's office. He said that he received the discovery in the case the following day. He recalled that he negotiated a plea for the petitioner that would limit his confinement to one year, but the petitioner refused to sign the agreement because he insisted he was innocent. He recalled that the jury consisted of five black females, five white females, and two white males. He said the petitioner offered no objection to any of the jurors. He said that he moved for acquittal after the State's close of proof, but the motion was denied. He called Wade Powell as a witness at the request of the petitioner. He recalled that he saw little value in calling Mr. Powell because he could not positively testify that the petitioner was in his shop at the time of the robbery. He said he had difficulty with

the petitioner trying to handle the case and, at one time, offered to sit as elbow counsel but the trial judge would not allow it. He said that he handled the petitioner's appeals until the Supreme Court denied permission to appeal.

The petitioner testified that he did not take the stand in his own defense because he was not guilty of anything. He said he was not told he had the right to testify or not to testify. He said counsel should have made sure the jury understood his questions to the witness but, in his opinion, counsel refused to ask the most important questions. The petitioner believed the police falsified the arrest report, and he wanted counsel to question them about it. He said that there was no testimony that anyone saw him leave the scene and no one took any fingerprints from the allegedly stolen items.

He said that he did not recall if counsel ever visited him in jail. He did recall that counsel visited with him "maybe once" just prior to trial. He recalled that he wore a prison uniform to trial even though counsel offered him a suit because he said he did not feel that his clothes would make a difference. On cross-examination he acknowledged that counsel did question the police on the witness stand regarding the discrepancies in the police report.

Analysis

On appeal, the petitioner contends that the post-conviction court erred in denying his petition for post-conviction relief. Specifically, he contends that counsel rendered ineffective assistance in failing: (1) to provide the petitioner a list of the Grand Jurors who indicted him and information regarding their racial makeup; (2) to be more zealous in selecting the jury and involving him in the selection process; (3) to insist that the petitioner testify on his own behalf; (4) to exercise his "superior powers of persuasion as an attorney" to talk him into wearing clothes other than his prison uniform during trial; and (5) to properly investigate and interview all the possible witnesses. The petitioner argues that he established deficient representation and prejudice resulting from that deficiency; however, he merely states the necessary standard to obtain post-conviction relief rather than actually provide any proof that he has established ineffective assistance of counsel. His argument consists only of conclusions and provides no support for his conclusions. The argument set out in his brief is insufficient for the petitioner to carry his burden of showing ineffective assistance of counsel.

Since the petitioner alleged ineffective assistance of counsel, it was the petitioner's burden in the post-conviction court to prove the allegations by clear and convincing evidence in order to get relief. T.C.A. § 40-30-110(f). We are required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In order to prove ineffective assistance of counsel, the petitioner must prove that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were

fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The Tennessee Supreme Court has also applied this standard to the right to trial counsel under Article I, Section 9 of the Tennessee Constitution, State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn.1989), and to the right to counsel on direct appeal under the Fourteenth Amendment. Campbell v. State, 904 S.W.2d 594, 596 (Tenn.1995).

Here, the petitioner has failed to prove his allegations by clear and convincing evidence, and the evidence does not preponderate against the findings of the post-conviction court. The petitioner has failed to show that counsel rendered ineffective assistance or that counsel's performance undermined confidence in the outcome of the case. The petitioner has offered no proof that the grand jury was unconstitutionally empaneled or that he was denied an opportunity to challenge any of the jurors.

The post-conviction court concluded that the petitioner was questioned in compliance with the requirements of Momon, that counsel clearly advised the petitioner of his right to testify or not to testify, and that the record reflects the petitioner voluntarily waived his right to testify. The evidence does not preponderate against the conclusion of the post-conviction court. Further, in his brief, the petitioner contends that counsel should have advised him to testify on his own behalf, not that counsel did not conduct a proper Momon hearing as alleged in the introductory statements of his brief. The petitioner offers no argument in his brief that counsel failed to conduct a Momon hearing.

We conclude that the petitioner's claim that counsel should have persuaded him to wear something other than his prison uniform at trial is without merit. The post-conviction court found that the petitioner insisted on going to trial in his prison clothes and that he has offered nothing on appeal to refute the conclusion of the post-conviction court.

Finally, the petitioner has offered no proof, other than his own testimony, that counsel failed to conduct a proper investigation prior to trial. The post-conviction court found that trial counsel was prepared for trial and did a good job of cross-examining the State's witnesses about discrepancies in their statements and their police reports. Further, the post-conviction court found that trial counsel caused the jury to be excused on several occasions when the petitioner was being difficult so that he would not say something to harm his case or prejudice his defense. The evidence does not preponderate against the findings of the post-conviction court. We conclude that there is no basis to grant relief, and we affirm the judgment of the post-conviction court.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE