IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 21, 2010 at Knoxville

## SHANDA ALENE WRIGHT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County**
**No. 2009-CR-92   Robert G. Crigler, Judge**

_____

**No. M2010-00613-CCA-R3-PC - Filed April 8, 2011**

_____

The Petitioner, Shanda Alene Wright, appeals as of right from the Marshall County Circuit Court's denial of her petition for post-conviction relief.  The Petitioner was convicted of especially aggravated burglary, especially aggravated robbery, and aggravated robbery.  She received an effective sentence of 16 years for her convictions.  The Petitioner challenges the performance of trial counsel.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Emeterio R. "Terry" Hernando, Lewisburg, Tennessee, for the appellant, Shanda Alene Wright.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Frank Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On direct appeal, this court affirmed the Petitioner's especially aggravated robbery and aggravated robbery convictions but modified her conviction for especially aggravated burglary to that of aggravated burglary.  State v. Shanda Alene Wright, No. M2006-02343-CCA-R3-CD, 2008 WL 371258 (Tenn. Crim. App. Feb. 11, 2008), perm. app. denied (Tenn. Oct. 27, 2008).  Although the facts of the Petitioner's case have already been discussed in

this court's opinion modifying and affirming the Petitioner's convictions on direct appeal, we will provide the following factual summary to establish context for the Petitioner's issues before this court. See id.

This case arose from the Petitioner's involvement in a home invasion. The Petitioner drove her four accomplices, Andrea Escalante, Reynaldo Sanchez, Alexander Prince, and Max Viliafane, to a home in Marshall County that was occupied by five victims. The Petitioner and Ms. Escalante stayed inside the vehicle, while Mr. Sanchez, Mr. Prince, and Mr. Viliafane entered the home. One victim escaped out the back door, while the other four victims were forced to the floor. One of the victims, Jesus Hernandez, was cut on the forearm with a knife and struck on the back of the head with a pistol. Another victim, Noe Hinojosa, was kicked in the head. After taking the victims' valuables, the three men left. The Petitioner, who had driven down the road, eventually drove by and picked the men up before leaving the area.

The Petitioner was approximately one month pregnant with Mr. Sanchez's child at the time of the home invasion. Several days prior to the home invasion, Mr. Sanchez and Mr. Prince were at the Petitioner's apartment. While the Petitioner was in the same room, Mr. Sanchez asked Mr. Prince if he wanted to help him rob some "Mexicans" that the Petitioner knew. Mr. Prince agreed. The Petitioner was present throughout the conversation but did not participate in the conversation. In her statement to the police, the Petitioner confessed to her involvement. However, at trial, the Petitioner asserted that she did not know that Mr. Sanchez and the others were planning to rob the victims and that she was scared of Mr. Sanchez.

After her convictions were modified and affirmed on appeal, the Petitioner filed a timely petition for post-conviction relief on November 3, 2009, in which she alleged that trial counsel was ineffective. The post-conviction court appointed counsel, who filed an amended petition on December 15, 2009.

At the post-conviction hearing, the Petitioner testified that she met with trial counsel three times and that each meeting lasted 15 or 20 minutes. She stated that she did not believe that they spent an adequate amount of time discussing her trial. She stated that in their meetings, they simply discussed the fact that their only option at trial was to ask for a conviction for a lesser-included offense. She stated that she told trial counsel that she believed that one of the victims had given a false name but that trial counsel told her that the victim's identity was not important.

After trial, the Petitioner learned that Mr. Hinojosa, the victim who had been kicked in the head, had lied about his identity. She stated that Mr. Hinojasa's real name was Juan

de la Cruz and that Ms. Escalante, one of the co-defendants, was pregnant with his child. She stated that Ms. Escalante was upset with Mr. Hinojosa because he had abandoned her. She said that Ms. Escalante had also been spending a lot of time with Mr. Sanchez, who was the leader in the commission of the offense. She believed that had the jury learned of Ms. Escalante's relationship with Mr. Hinojosa and Mr. Sanchez, her role in the crime could have been mitigated. She stated that the prosecution portrayed her as the "mastermind" of the offense because she was the only one who knew where the victims lived. She stated that had trial counsel investigated Mr. Hinojosa's identity as she had asked, trial counsel could have proven that Ms. Escalante, who also knew where the victims lived, had a motive to plan the offense. In support of her assertions, she identified an arrest report that depicted a man named Juan de la Cruz. She said that Juan de la Cruz was Mr. Hinojosa.

The Petitioner also testified that she did not believe that trial counsel "worked hard enough" to negotiate a proper plea agreement for her. She stated that Ms. Escalante, who had been charged with the same crimes, received a negotiated sentence of 12 years at 30 percent.

On cross-examination, the Petitioner admitted that she had met with trial counsel approximately eight times and that during several of those meetings, they discussed the facts of her case, the indictment, and the discovery documents. She admitted that she also met trial counsel in Lewisburg and that he drove her to the crime scene, where they discussed the case.

She stated that she did not know the importance of Mr. Hinojosa's true identity until after trial and that she had only told trial counsel that Mr. Hinojosa may have been using a false name. She further admitted that at the time of trial she knew that Ms. Escalante "was pregnant by a man named Juan" but that she did not know that Juan and Mr. Hinojosa were the same person. She stated that she did not tell trial counsel about Juan because he told her he would not investigate Mr. Hinojosa's identity. She admitted that at trial, she had been asked on cross-examination whether she knew that Ms. Escalante had visited the victims' home. She had also been asked if she knew that Ms. Escalante was "pregnant by one of the gentlemen there." At trial, she responded, "I knew she was pregnant but I didn't know by who." She admitted that through this testimony, the jury learned that Ms. Escalante had also visited the residence.

She admitted that she and trial counsel discussed their strategy before trial and that she had refused a plea agreement offer of 15 years and insisted on going to trial. She stated that she insisted on going to trial because she believed that she would receive essentially the same amount of time if she were convicted. She admitted that Ms. Escalante had chosen to plead guilty and did not go to trial.

Trial counsel testified that although he did not have an independent recollection of how many times he met with the Petitioner, he had retained a copy of his claim for attorney's fees. The claim reflected that he spent a total of 66.9 hours working on her case and that he met with the Petitioner at least eight times prior to trial. Trial counsel stated that he believed he spent an adequate amount of time investigating the case and meeting with the Petitioner. He stated that he remembered her case because of her young age and the fact that she was the same age as one of his daughters. He said that he attempted to negotiate for a better agreement but that the State would not "come off of the 100 percent" and that the Petitioner was not willing to accept a 15-year sentence with 100 percent service. He stated that their approach was to "shoot for a lesser included offense" because she had refused the State's plea offer. He said that his main contention at trial was that the State had failed to prove serious bodily injury and that he also tried to argue that a conviction for facilitation would have been more appropriate for her role in the crimes.

Trial counsel could not remember if the Petitioner had told him that one of the victims was using a false name. He stated that he would have likely told her that the victim's identity did not matter when she was not contesting her involvement in the crime. He said that they knew about Ms. Escalante's involvement with the residence because Ms. Escalante had admitted in her statement that she had been to the house with Mr. Sanchez and the Petitioner. He stated that they also knew that the Petitioner's mother had dated a person in the house at one time. He stated that the Petitioner was never portrayed as the "brains" or "moving force" behind the crime but that she had been convicted for her criminal responsibility for Mr. Sanchez's actions. He further stated that he did not believe that Mr. Hinojosa's true identity would have made any difference at trial.

On cross-examination, trial counsel stated that he would not have been surprised that one of the victims had been using a false name because that was commonplace in his line of work. He stated that had he known about the relationship between Mr. Hinojosa and Ms. Escalante, he would have thought "long and hard before [he] got on that horse." He stated that he still did not believe that this information would have proven that Ms. Escalante was the "mastermind or moving force" when Ms. Escalante expressed concern about the victims in the house when the male co-defendants returned to the car. He stated that the Petitioner's role in the crime would not have been affected by Mr. Hinojosa's identity and relationship to Ms. Escalante.

Following the evidentiary hearing, the post-conviction court denied relief and found that trial counsel "represented the [Petitioner] very well in this case." The post-conviction court stated that attacking Mr. Hinojosa because he provided a false identity would not have been an effective strategy and that testimony regarding Ms. Escalante's relationship to the house had been presented to the jury. The post-conviction court accredited trial counsel's

testimony regarding his time spent on the case and found that the time spent was "more than adequate." The post-conviction court, stating that the Petitioner had "no right to a plea bargain," found that it was not trial counsel's fault that the Petitioner had not been offered a better plea agreement.

ANALYSIS

The Petitioner contends that trial counsel failed to spend an adequate amount of time preparing for the case, meeting with her, and discussing potential strategies and tactics. The Petitioner further contends that trial counsel failed to investigate an important witness's identity and failed to negotiate for an adequate plea bargain. The State responds that trial counsel met with the Petitioner, properly prepared for the case, performed a reasonable investigation of the case, and developed all realistic defensive strategies. The State further responds that trial counsel diligently sought a plea agreement in the Petitioner's case, that the Petitioner was not entitled to a plea agreement, and that the Petitioner cannot fault trial counsel for failing to negotiate a better agreement.

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations to support her grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves her allegations by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article

I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The record reflects that trial counsel spent a significant amount of time preparing for trial and meeting with the Petitioner. Additionally, the Petitioner developed a defense based on sound trial strategy. Accordingly, we conclude that the post-conviction court did not err in finding that the Petitioner failed to establish by clear and convincing evidence that counsel did not meet with her or develop a proper defense strategy.

As to the Petitioner's contention that trial counsel should have investigated Mr. Hinojosa's identity to establish Ms. Escalante's motive, the Petitioner admitted that she did not inform trial counsel about Ms. Escalante's association with Mr. Hinojosa. We acknowledge that the Petitioner provided documentation regarding Mr. Hinojosa's identity. However, Mr. Hinojosa and Ms. Escalante did not testify at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We cannot speculate as to how Mr. Hinojosa may have responded to a rigorous cross-examination concerning his identity and relationship to Ms. Escalante. Id. We also cannot speculate as to how Ms. Escalante would have responded to a rigorous cross-examination concerning her relationship to Mr. Hinojosa and her role in the offense. Id. Moreover, we do not believe that establishing the relationship between Mr. Hinojosa and Ms. Escalante would have affected the outcome at trial. The jury heard that Ms. Escalante had been to the residence and may have been pregnant by a man living at the residence. Accordingly, we conclude that the post-conviction court did not err in finding that the Petitioner failed to establish by clear and convincing evidence that counsel should have developed a strategy based upon the victim's alleged false identity.

As to the Petitioner's contention that trial counsel failed to negotiate an adequate plea agreement, trial counsel stated that he attempted to negotiate for a lesser sentence but that the State was resistant and that the Petitioner had rejected the State's final offer. The Petitioner was not entitled to a plea agreement, and she cannot fault counsel for the State's resistance to his negotiations. See State v. Head, 971 S.W.2d 49, 50 (Tenn. Crim. App. 1997) (stating that the "district attorney general is not required to engage in plea bargaining"). Accordingly, we conclude that the post-conviction court did not err in finding that the Petitioner failed to establish by clear and convincing evidence that counsel failed to negotiate a plea agreemet.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE