# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## TIMOTHY DEWAYNE WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 5815      Joseph H. Walker, Judge**

**No. W2011-01919-CCA-R3-PC  - Filed August 21, 2012**

The Petitioner, Timothy Dewayne Williams, appeals as of right from the Tipton County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance of counsel from the attorneys representing him at trial because they failed to call an eyewitness to the crime. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

George D. Norton, Jr., Ripley, Tennessee, for the appellant, Timothy Dewayne Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; D. Michael Dunavant, District Attorney General; and Jason Poyner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Following a jury trial, the Petitioner was convicted of possession of cocaine with intent to deliver, a Class B felony, evading arrest in a motor vehicle, a Class E felony, evading arrest, a Class A misdemeanor, and driving on a suspended license, a Class B misdemeanor. See State v. Timothy Dewayne Williams, No. W2008-02730-CCA-R3-CD, 2010 WL 1172206 (Tenn. Crim. App. Mar. 26, 2010), perm. app. denied, (Tenn. Sept. 2, 2010). The Petitioner received an effective twenty-year sentence as a Range III, persistent offender. On appeal, this court merged the misdemeanor evading arrest conviction with the felony evading arrest conviction and affirmed the Petitioner's remaining convictions. Id. at *3-5.

At trial, the arresting officer testified that he saw the Petitioner run a stop sign while driving a white Buick Regal. When the officer attempted to stop the vehicle, the Petitioner drove away. The Petitioner then parked the Buick sideways, blocking the road, and fled on foot to another car. While the Petitioner was running away from the Buick, he threw a bag containing cocaine on the ground. The arresting officer "found an unidentified teenager waiting" in the passenger seat of the Buick. The arresting officer testified that he "did not speak with the teenager because the teenager's mother arrived shortly after he discovered the teenager." The arresting officer further testified that he knew who the Petitioner was because he had previously cited the Petitioner for traffic violations and had seen him "around town." The arresting officer elaborated that anyone in the local area law enforcement knew the Petitioner. Williams, 2010 WL 1172206, at *1.

On April 21, 2011, the Petitioner filed a timely pro se petition for post-conviction relief. The post-conviction court appointed counsel, and an amended petition was filed on July 8, 2011. Both petitions alleged that the attorneys who represented the Petitioner at trial were ineffective because they failed to call the juvenile found in the white Buick as a witness at trial. In his pro se petition, the Petitioner asserted that this witness would have established that the Petitioner was not the driver of the white Buick and was not at the crime scene. On August 8, 2011, the post-conviction court held a hearing on the petition.

At the post-conviction hearing, the Petitioner testified that he was represented by two attorneys at trial, lead counsel and assistant counsel. The Petitioner testified that he told lead counsel that he "need[ed] to find" the passenger who police found in the car. According to the Petitioner, he learned from his fellow inmates that the passenger was Kevin Somerville. The Petitioner testified that lead counsel told him that he had spoken to Mr. Somerville and that Mr. Somerville had stated that the Petitioner was never in the car. However, lead counsel later informed the Petitioner that Mr. Somerville had then told the prosecutor "something different" and that they would not call Mr. Somerville as a defense witness. The Petitioner recalled that lead counsel informed him that Mr. Somerville had been subpoenaed as a witness for the State. The Petitioner told lead counsel, "That's cool. If the State [was] going to call him, then we still could cross-examine him." The Petitioner testified that he understood that there was no need to subpoena Mr. Somerville if he was going to be a witness for the State.

The Petitioner testified that he told his attorneys "over and over" that he wanted Mr. Somerville to testify at his trial. According to the Petitioner, on the day of his trial, lead counsel informed him that the State had decided not to call Mr. Somerville as a witness. The Petitioner testified that he then asked lead counsel to subpoena Mr. Somerville because Mr. Somerville was not present in the courtroom that day. The Petitioner claimed that his attorneys never contacted Mr. Somerville. However, the Petitioner admitted that he had no

proof that his attorneys lied to him about speaking with Mr. Somerville.  The Petitioner also admitted that Mr. Somerville was the only possible witness that he told his attorneys to investigate and that he did not provide his attorneys with the names of any other witnesses who could provide him with an alibi.  The Petitioner further admitted that he knew Mr. Somerville "from around town" and that they were "kin folks."

At the hearing, Mr. Somerville testified that the Petitioner was not with him in the white Buick and that he would have testified to that if he had been called as a witness at trial.  According to Mr. Somerville, he told the arresting officer that someone called "Black" was in the car with him.  Mr. Somerville testified that he never told anyone that the Petitioner was in the car with him.  Mr. Somerville also testified that he never received a subpoena to appear in court and that he did not know when the Petitioner's trial was to take place.   Mr. Somerville claimed that assistant counsel "tried to cross [him] up" and "tried to . . . switch it all around and like he [was] going [to] blame everything" on Mr. Somerville unless Mr. Somerville would say that the Petitioner was in the car.  Mr. Somerville insisted that if assistant counsel testified that he said the Petitioner was in the car, it would be "a bold-faced lie."   Mr. Somerville also repeatedly insisted that someone tried to get him to say the Petitioner was in the car and threatened that if he did not "they would try to blame everything on [him]."  However, it was unclear whether Mr. Somerville was referring to the prosecution or the Petitioner's attorneys.

On cross-examination, Mr. Somerville admitted that he had been subpoenaed by the State and that he "came" to the Petitioner's trial, "but they said they didn't need [him]."  Also on cross-examination, Mr. Somerville testified that he knew the Petitioner "from around the way" and that he had "been knowing him for a long time."  Mr. Somerville also testified that he did not know if he was related to the Petitioner because he was "kin to everybody in Covington."  Mr. Somerville further insisted that the Petitioner was not his friend.  When asked whether it bothered him that the Petitioner went to jail for twenty years because he did not testify at trial, Mr. Somerville responded that it did not because, "It ain't me."

Lead counsel testified that he represented the Petitioner at trial and on appeal.  Lead counsel testified that he did not speak with Mr. Somerville but that assistant counsel did.  Lead counsel recalled that Mr. Somerville "voluntarily presented himself" at the District Public Defender's office, and he thought that if he needed Mr. Somerville to testify he would not need to subpoena Mr. Somerville because Mr. Somerville was a "friendly, available witness."  However, lead counsel determined that Mr. Somerville would have been a "good prosecution witness" after speaking with assistant counsel.

Assistant counsel testified that he assisted with the trial preparation for the Petitioner's case and that he spoke with Mr. Somerville because he was acquainted with Mr. Somerville's

mother. Assistant counsel recalled that Mr. Somerville had "inadvertently stopped in" his office on his way to meet with the prosecutor. Mr. Somerville agreed to come back and speak with assistant counsel after he spoke with the prosecutor. Assistant counsel testified that Mr. Somerville told him that the Petitioner was in the car with him. Assistant counsel further testified that the prosecutor informed assistant counsel that he planned to call Mr. Somerville as a witness for the State. Assistant counsel testified that he believed that the State would call Mr. Somerville as a witness, but regardless he would not have called Mr. Somerville as a defense witness because he did not believe that Mr. Somerville would have been a good witness for the Petitioner. Assistant counsel further testified that he thought Mr. Somerville would not have made "a good witness for either party." Assistant counsel recalled that the arresting officer testified at trial that Mr. Somerville told him the Petitioner was with him in the car. Assistant counsel also recalled that he could not find anyone to provide the Petitioner with an alibi.

On August 12, 2011, the post-conviction court entered an order denying post-conviction relief. The post-conviction court accredited the testimony of the lead and assistant counsel and found "Mr. Somerville's testimony untrustworthy and unbelievable." The post-conviction court also stated that "it is not ineffective assistance of counsel to not call as a witness a juvenile who tells you your client committed the crime." The post-conviction court described the decision not to call Mr. Somerville as a "wise" strategic decision. The post-conviction court concluded that the Petitioner "failed to present anything on this issue to show that the service rendered by trial counsel were deficient or the deficient performance was prejudicial."

## ANALYSIS

The Petitioner contends that the post-conviction court erred by denying him post-conviction relief. The Petitioner argues that his trial attorneys' failure to call Mr. Somerville as a witness amounted to ineffective assistance of counsel.[1] The State responds that the Petitioner has failed to prove by clear and convincing evidence that his trial attorneys' decision not to call Mr. Somerville as a defense witness was deficient and prejudicial. The State argues that the decision was a strategic one based on adequate preparation.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn.

---

[1]The Petitioner in both his original pro se and amended petitions raised several other factual claims of ineffective assistance of counsel. The post-conviction court denied post-conviction relief on these claims as well. The Petitioner has waived appellate review of these issues by not raising them in his brief. See Tenn. R. App. P. 13(b).

Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

When a petitioner contends that trial counsel failed to call a known witness in support of the defense, the witness "should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This is the only way the petitioner can establish that failure "to call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. In order for the petitioner to receive post-conviction relief based upon trial counsel's failure to call a witness, the petitioner must "produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." Id. at 758.

We are bound by the post-conviction court's determination that Mr. Somerville was an "untrustworthy and unbelievable" witness. We agree with the post-conviction court's assessment that the trial attorneys' decision not to call Mr. Somerville was a "wise" strategic decision. Mr. Somerville told the arresting officer, the prosecution, and the defense attorneys that the Petitioner was with him in the car at the time of the incident. Both lead and assistant counsel believed that Mr. Somerville would have ultimately been a witness for the State. Calling Mr. Somerville as a defense witness would have amounted to no more than a "fool's errand" and would have likely prejudiced the Petitioner much more than not calling him. Therefore, we decline to second-guess trial counsels' strategic decision and affirm the

judgment of the post-conviction court.  See Ben Mills v. State, No. W2005-00480-CCA-R3-PC, 2006 WL 44381, at *8-9 (Tenn. Crim. App. Jan. 5, 2006), perm. app. denied, (Tenn. May 1, 2006).

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE