IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2008

## CALVIN SCOTT v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. P-28009     James C. Beasley, Jr., Judge

No. W2007-02051-CCA-R3-PC  - Filed February 20, 2009

The petitioner, Calvin Scott, appeals as of right the post-conviction court's denial of his petition for post-conviction relief. The petitioner alleged that he was denied the effective assistance of counsel due to trial counsel's failure to appeal the trial court's denial of his motion to suppress. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P.  3 Appeal as of Right;  Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

James E. Thomas, Memphis, Tennessee, attorney for appellant, Calvin Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

## OPINION

In January 2002, a Shelby County jury convicted the petitioner of two counts of first degree murder, two counts of especially aggravated robbery and one count of aggravated robbery. He received an effective sentence of life imprisonment plus twenty-two years. The petitioner's convictions and sentences were affirmed on direct appeal. State v. Calvin Scott, No. W2002-01324-CCA-R3-CD, 2003 WL 21644414 (Tenn. Crim. App. July 8, 2003), perm. app. denied (Tenn. Dec. 1, 2003).

On December 17, 2003, the petitioner filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel in the trial and appeal of his case. At the evidentiary hearing, the petitioner concentrated his proof on allegations that trial counsel was ineffective by failing to investigate thoroughly the facts of the case and possible impeachment of

witnesses and by failing to raise on appeal the propriety of the trial court's denial of his motion to suppress.

Trial counsel testified that he was appointed to the petitioner's case prior to the preliminary hearing and represented him throughout the trial proceedings. His representation included an evidentiary hearing on a motion to suppress and a trial that ended in a mistrial when the jury was unable to reach a verdict. Within a few months, the petitioner was convicted upon retrial. Trial counsel recalled that the only surviving victim to the offenses, Brian Petty, knew the petitioner. In fact, he recalled that the petitioner testified at trial that he spared Petty's life. He also recalled that Petty gave several inconsistent statements regarding the facts of the offenses; thus, trial counsel felt that a good trial strategy would be to show that Petty had been untruthful about the petitioner's involvement in the offenses. Trial counsel stated that he investigated rumors that Petty may have been romantically involved with the spouse of one of the victims but that the individual who had made those allegations later denied them. He recalled investigating all possible areas of defense, explaining that "if it was something that raised a red flag and we thought there was some lead, or something that needed to be followed up, we would. But, if it was a dead end, then no, we wouldn't do that, if it didn't pan out."

Relevant to the motion to suppress, trial counsel testified that he filed a motion to suppress the petitioner's statements made to a police officer, who was also the petitioner's aunt, based upon an allegation of involuntariness because the petitioner alleged that certain promises of leniency were made to him at the time of his statements. Trial counsel testified that:

> We raised the issue, because his aunt brought him in and that raised a red flag. His aunt brought him to the police station and into homicide, took him back in the office and she did not specifically tell him everything was going to be all right, but she led him to believe that everything was going to be all right, if he, in fact, cooperated with the investigative officers.

Trial counsel recalled that the petitioner came to the police station after contacting his aunt. His aunt met him in the parking lot and brought him into the station to talk with the homicide investigators. Trial counsel could not specifically recall whether the petitioner's aunt questioned the petitioner but stated that "I just knew the whole procedure, her picking him up, her bringing him down, her taking him up to homicide, it was wrong." He admitted that there were no actual promises of leniency or plea negotiations that occurred between the petitioner and his aunt, stating that "[the petitioner] thought that because his aunt surrendered him, that he would receive some favorable treatment, is basically what it amounted to." Trial counsel also recalled that the petitioner's aunt told trial counsel that the petitioner denied involvement in the murders when she spoke with him. After meeting with the homicide investigators, the petitioner waived his <u>Miranda</u> rights and made a full confession admitting his involvement in the crimes but claiming that another individual, Wayne Brown, forced him to do it. Furthermore, trial counsel recalled that during the suppression hearing the petitioner admitted to killing the victims. Trial counsel testified that he was unable to locate Brown and that, to his knowledge, Brown had not been located as of the date of the evidentiary hearing. In summary, trial counsel testified that he felt that had he won the motion to suppress in the trial court, it would

have given him "at least a fighting difference" in the defense against the charges and that he could not understand why he had not raised the denial of the motion to suppress as error on direct appeal.

The post-conviction court found that there was no evidence to support the petitioner's allegation that trial counsel failed to adequately investigate the impeachment of witnesses and the motion to suppress. The post-conviction court found that the allegation regarding the motion to suppress at the trial court level had no merit. Specifically, the post-conviction court found that "although the Motion to Suppress raised some interesting issues and was hard fought by the defense[,] it had no merit and should not have been granted." The post-conviction court further found that "trial counsel very effectively handled the Motion and did everything possible to have said confession suppressed." However, the post-conviction court did find that trial counsel's performance was deficient in light of counsel's failure to challenge the ruling on the motion to suppress on appeal. Nevertheless, the post-conviction court found that the ruling on the motion to suppress would not have been overturned on appeal; therefore, the post-conviction court found that there was no prejudice caused by trial counsel's failure to include the issue in the motion for new trial or challenge the ruling on appeal. Based upon these findings of fact, the post-conviction court denied relief.

ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-372, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. 2068. The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The proof presented refutes the petitioner's claim that trial counsel failed to investigate the case adequately for possible impeachment evidence and proof of another's involvement in the offense. Trial counsel testified that he thoroughly investigated every "red flag" until his investigation revealed that certain issues or leads "just didn't pan out." Trial counsel stated that he attempted to locate an individual the petitioner claimed forced him to commit the offenses but that

he was unable to locate him. Trial counsel even testified that, to his knowledge, the individual had never been located. Significantly, the petitioner failed to present any additional proof at the post-conviction evidentiary hearing regarding the alleged witness. Therefore, the petitioner's allegation regarding the failure to locate this witness must fail based upon his failure to call such witness at the post-conviction hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing). Therefore, we conclude that the evidence does not preponderate against the findings of the post-conviction court regarding the allegations that trial counsel failed to interview witnesses and investigate the case.

Relative to the petitioner's allegation that trial counsel was ineffective in failing to preserve and appeal the trial court's denial of the motion to suppress, the record before us does indicate that the post-conviction court thoroughly reviewed both the transcript and trial court's suppression order as part of its consideration. We note, however, that both the transcript of the suppression hearing and the trial court's ruling denying the motion were not included in the record on appeal, despite being made exhibits to the post-conviction hearing. It is the duty of the appellant to insure that a fair, accurate and complete record is presented to this court on appeal. See Tenn. R. App. P. 24(b). However, correspondence from the Shelby County Court Clerk found in this court's record indicates that the exhibit notebook had been lost from the official post-conviction court record. We also note that based upon the testimony presented at the evidentiary hearing, we can discern no basis for the suppression of the petitioner's statement. Under these circumstances, we conclude that the evidence does not preponderate against the finding of the post-conviction court.

CONCLUSION

In consideration of the foregoing, the judgment of the post-conviction court denying the petition for post-conviction relief is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE