**Gary Bradford CONE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Nov. 4, 1987.

Permission to Appeal Denied by Supreme Court March 14, 1988.

James D. Kopernak, Katherine Witherspoon, Memphis, for appellant.

W.J. Michael Cody, Att. Gen., Gordon W. Smith, Ass. Att. Gen., Nashville, Edgar A. Peterson, IV, Ass. Dist. Att., Memphis, for appellee.

## OPINION

LLOYD TATUM, Special Judge.

This is an appeal by Gary Bradford Cone from a judgment denying post conviction relief. The appellant was convicted of first-degree murder and the death penalty was imposed. He was also found guilty of several other offenses. On direct appeal, the Supreme Court of Tennessee affirmed the conviction. *State v. Cone,* 665 S.W.2d 87 (1984). The opinion of the Supreme Court summarizes the facts and we will not repeat them here except insofar as is necessary to discuss the issues presented.

The first issue presented is:

"The improper final arguments of both prosecutors for the State at the conclusion of the trial to determine guilt or innocence affected the verdict of the jury to the prejudice of the defendant."

The appellant was convicted of beating an elderly couple to death on August 10, 1980. He was given the death penalty for each of the two murders.

On August 9, 1980, the appellant robbed a jewelry store in Memphis. In a high-speed chase after the jewelry store robbery, the appellant abandoned his automobile. In the automobile there was found a great quantity of assorted drugs. The list of these drugs is composed of four pages in the transcript of the original trial.

Officers also found the sum of $2,459.94 in the appellant's abandoned automobile. At the time of the trial, the appellant was under indictment for the robbery of a Big Star grocery store from which $1,893.72 was taken. The Big Star robbery also occurred on the day before the murder of the two elderly people. The record does not reveal the source of the rest of the money that was found in the abandoned automobile ($566.22).

It might be said that the proof that the appellant killed these two victims is conclusive. At trial, the appellant admitted committing these homicides and the other crimes involved.

The only defense interposed by him was that of insanity, or lack of mental capacity, due to drug abuse (chronic amphetamine psychosis) and to stress arising out of his previous service in the Vietnamese War (Vietnam Veteran Stress Syndrome). Hence, it was his theory that he was a drug addict. It was the prosecution's theory that the appellant was not a drug addict.

The following occurred during the opening argument by the State at the guilt phase of the trial:

"GENERAL PATTERSON: Has an automobile that—I've got a '73 automobile. How does he do all this? I'm not trying to be absurd, but he says he's a drug addict. *I say balony.* (sic) *He's a drug seller.* Doesn't the proof show that? Well, let's see what we found in this car—(emphasis added)

MR. DICE: I want to object, if Your Honor please, for the record.

GENERAL PATTERSON: Let's see what—

THE COURT: Excuse me.

MR. DICE: Not indicted. Not charged. Not one piece of evidence.

THE COURT: Yes, I'm going to sustain the objection to any argument along the

line of drug selling, General. I think that's improper argument.

GENERAL PATTERSON: For a point of clarification, I can argue an inference from the fact, can't I?

THE COURT: Yes, but you can't argue the inference from the fact that someone has been violating the law by selling drugs, I think, General. So, I'm going to have to sustain the objection to that."

After the State's opening argument, defense counsel argued the defense theory that the appellant was insane due to drug abuse. There was also argument by the defense concerning the appellant's indigency. In response, the State argued as follows:

"GENERAL STROTHER: The last time that I heard anything about his client, his client had over $2,000 cash on him. His client had flown to Hawaii. His client was living in Key West. His client had bought a motorcycle. His client had an automobile. That's just lawyer talk, that indigency business.

He say, (sic) well, the State shows no evidence. Where are the indictments? Where are the charges for drug sales? There aren't any charges for drug sales, but that doesn't mean that you can't look and question in deciding whether or not this man was, in fact, a drug user, or why he had those drugs. Did he just have those drugs, or did he have those drugs and thousands of dollars in that car? Among those drugs are there only the drugs he used? How do we know if he used drugs? The only thing that we ever had that he used drugs, period, is the fact that those drugs were in the car and what he told people. What he told people. But according to even what he told people, there are drugs in there he didn't even use. A whole page of drugs. Barbiturates that he didn't even use. Why would those be there? Why would he have those in there? Why? *Common sense, and a reasonable answer to that? Same place that $2,000 came from.*" (Emphasis added)

The above-quoted argument by the State is the basis of the complaint of prosecutorial misconduct. The appellant says that the prosecuting attorneys knew, or should have known, that most of the money found in the appellant's abandoned vehicle came from a robbery that occurred on August 9, and not from the sale of drugs. At the post-conviction hearing, one of the prosecuting attorneys testified that he was aware of the indictment for the Big Star robbery but had not familiarized himself with the details because the District Attorney's office had no intention of prosecuting that case. The trial court held that the reference to the money was not made with an improper intent.

The test for alleged improper prosecutorial misconduct is, "whether the improper conduct could have affected the verdict to the prejudice by the defendant." *Judge v. State,* 539 S.W.2d 340, 344 (Tenn. Crim.App.1976). The great quantity of assorted drugs found in the appellant's abandoned automobile supplied a strong inference that the drugs were possessed for resale. *State v. Dowell,* 705 S.W.2d 138 (Tenn.Crim.App.1985); *Wells v. State,* 509 S.W.2d 520 (Tenn.Crim.App.1973), *affm'd.* 517 S.W.2d 755. In view of the abundant other evidence that the appellant was a drug salesman, we find that the reference to the money was relatively insignificant, although it should have not been made. There was abundant evidence, not referred to in the above-quoted argument, that the appellant was not a drug addict. We find beyond a reasonable doubt that the reference to the money did not affect the verdict of the jury in either the guilt or punishment stage of the trial.

In the second issue, the appellant asserts that trial counsel was ineffective. The appellant alleges that his trial attorney rendered ineffective assistance by (1) failing to interview the State's rebuttal witness, Ilene Blankman, prior to trial; (2) in failing to object to the improper argument of General Strother implying that the petitioner was a drug dealer; (3) inadequate cross-examining the State's expert witnesses; (4) failing to introduce mitigating evidence at the sentencing phase of the trial; and, (5) failing to make a final argument at the sen-

tencing phase. We will discuss each of these contentions.

## FAILURE TO INTERVIEW WITNESS

■ It is admitted that counsel failed to interview Ilene Blankman, a rebuttal witness for the State, prior to trial. Briefly, she testified that she was the appellant's girlfriend, that the appellant was not a drug addict and had no needle marks on his body. The trial court found that counsel knew Ms. Blankman was going to testify for the State. Defense counsel discussed this fact with the appellant and the appellant strongly insisted that defense counsel not talk with her. She was a former girlfriend and the appellant informed defense counsel in detail regarding his relationship with her. Defense counsel cross-examined her. There is no showing that her testimony would have been different had defense counsel talked with her before trial or that the failure to interview in any manner prejudiced the appellant. The trial court found that even if it could be said that counsel's performance was deficient in this regard, such deficiency was not prejudicial and did not render the assistance of counsel ineffective. See *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed. 2d 674 (1984).

## FAILURE TO OBJECT TO IMPROPER ARGUMENT

■ The appellant contends that his attorney failed to object to the above-quoted argument of General Strother at the guilt phase implying that the petitioner was a drug dealer. As above stated, the argument by the State was legitimate in context of this case; there was an issue as to whether the drugs found in the appellant's car were possessed by the appellant for his own use or his inventory as a drug dealer. Also as stated, the argument concerning the amount of money in the car might have been objectionable but was relatively insignificant. The trial attorney testified that he did not object to the argument because he did not want to reemphasize it to the jury. The trial court accredited defense counsel's testimony in this regard. Counsel's strategic decision not to object was a

legitimate trial tactic, the exercise of which does not furnish a basis for finding counsel's representation deficient. See *State v. Martin,* 627 S.W.2d 139, 141 (Tenn.Crim. App.1981). Moreover, the reference to the amount of money was relatively insignificant when considered with all of the other evidence above referred to. Hence, the failure to object did not prejudice the appellant. The Trial Court concluded that this tactic did not amount to ineffective assistance of counsel.

## INADEQUATE CROSS-EXAMINATION OF EXPERT WITNESSES

■ The appellant contends that trial counsel failed to adequately cross-examine the State's expert witnesses on the insanity issue. This issue was not raised in the post conviction petition, nor was there any evidence on this issue at the post conviction hearing. An issue raised for the first time on appeal is waived. *Ellison v. State,* 549 S.W.2d 691, 694 (Tenn.Crim.App.1976). Moreover, the record fails to support the petitioner's contention on appeal.

## FAILURE TO INTRODUCE MITIGATING EVIDENCE

■ The appellant contends that counsel's representation was insufficient because he failed to introduce any mitigating evidence at the sentencing phase. The appellant stated that two medical experts who testified for the defense at the guilt phase of the trial should have been reintroduced to testify at the penalty phase as to the appellant's mental state at the time the crimes were committed. He also contends that his mother should have been reintroduced to testify concerning his early childhood.

The trial court accredited the testimony of the defense attorney during which he explained that this evidence had been presented during the guilt stage of the proceeding. Trial counsel was aware that the trial judge would instruct the jury that it should consider mitigating circumstances proved at the guilt stage of the trial. Defense counsel also testified that the appellant's mother did not make a good witness

at the guilt stage of the trial and in his judgment, the best tactic was to not subject her to further cross examination.

The appellant also complains because defense counsel did not introduce other relatives and associates to testify concerning his early childhood. Defense counsel testified that these potential witnesses were interviewed by him and that he concluded that there was a danger that cross examination would elicit additional criminal activity on the part of the appellant. There is nothing in the record to show that the testimony of these witnesses would have benefited the defense. In the absence of this showing, we will not presume that trial counsel erred in not calling them as witnesses. See *State v. Martin, supra.*

The appellant also states that his mother should have been called as a witness to enable her to make "a plea to the jury for her son's life." If the appellant means by this that the mother should have been permitted to make an emotional appeal or speech to the jury, this practice is not permitted in our system.

The appellant also argues that a letter written to the appellant by a member of the family of the victim should have been introduced at the penalty phase. One member of the victim's family, who wrote this letter, apparently forgave him for committing these offenses. We fail to see how a forgiving letter written by someone else would mitigate the appellant's guilt.

The appellant agreed that he would not testify at either stage of the trial. The appellant told his attorney that he could not control his anger toward the prosecuting attorneys. Defense counsel discussed at length on different occasions the question as to whether the appellant should testify and it was his informed decision not to testify.

## FAILURE TO MAKE FINAL ARGUMENT AT THE SENTENCING PHASE

█ The appellant contends that counsel's performance was deficient because he failed to make a final argument pleading for the petitioner's life at the sentencing phase. The trial judge found that counsel deliberately waived final argument as a tactic.

One of the prosecuting attorneys made a low-key opening argument after the punishment hearing. It was trial counsel's judgment that he should waive argument to prevent the other prosecuting attorney from making closing argument. The other prosecutor was capable of making very devastating closing arguments and he could not be answered by defense counsel. This is a legitimate trial tactic, the exercise of which furnishes no basis for a finding of ineffective assistance. See *State v. Martin, supra.*

The question of what witnesses to use and whether to waive final argument are tactical questions upon which competent lawyers might disagree. It cannot be said that incompetent representation had occurred merely because other lawyers, judging from hindsight, might have made a better or different choice of tactics. *Hellard v. State,* 629 S.W.2d 4, 12 (Tenn.1982); *Martin v. State, supra.*

The trial court found the factual issues in favor of the State and found that trial counsel was not ineffective. The Court's factual findings are binding on this court unless the evidence preponderates against them. *Graves v. State,* 512 S.W.2d 603, 604 (Tenn.Crim.App.1973). The evidence does not preponderate against the trial court's findings.

Trial counsel made a diligent and thorough investigation of the facts and the law. Although the appellant was without funds, trial counsel was able to procure a defense team composed of himself, a research expert, medical experts, and an investigator. No stone was left unturned in the preparation of the appellant's defense. Trial counsel was very conscientious in representing the appellant and placed much thought and effort into the tactical aspects of this case. However, trial counsel's work and diligence could not remove the overwhelming evidence against the appellant, both on the factual issue and insanity issue. In our view, the findings of guilt and the imposition of the death penalty were based upon

the facts and the law—not by shortcomings of counsel.

We agree with the trial judge that trial counsel met the standard required by *Baxter v. Rose,* 523 S.W.2d 930 (Tenn.1975).

The judgment of the trial court is affirmed.

DWYER and SCOTT, JJ., concur.