# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 29, 2014

## TERRY D. SANDERS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Houston County**
**No. 5130    George Sexton, Judge**

**No. M2014-00236-CCA-R3-PC - Filed October 31, 2014**

The Petitioner, Terry D. Sanders, appeals the Houston County Circuit Court's denial of his petition for post-conviction relief from his convictions for two counts of the sale of less than 0.5 gram of cocaine and his effective thirty-year sentence. The Petitioner contends that the trial court erred in denying a mistrial when the State's confidential informant testified that the Petitioner was on community corrections, that he received the ineffective assistance of counsel, and that he was denied a fair trial due to cumulative errors in the conviction proceedings. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Kelly Jackson Smith, Dickson, Tennessee, for the appellant, Terry D. Sanders.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Senior Counsel; Ray Crouch, District Attorney General; and Sarah Whitney Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Conviction Proceedings

The Petitioner's convictions relate to two sales of crack cocaine to a confidential informant. The Petitioner was charged with three counts involving two informants, and the counts in this case were severed from the count involving the other informant. The first trial for these counts resulted in a mistrial after discovery of the existence of a video recording of which the prosecutor had been unaware. The Petitioner was convicted at the second trial.

The transcript of the second trial reflects that before the proof began, the trial judge stated the following:

> Of course, we mentioned from the previous trial there was a ruling apparently when the informant goes to Mr. Sanders' house and Mr. Sanders gave him the [shh] be quiet sign, pointed to the monitor on his leg because he was on community corrections. I recall my ruling to be – the witness can testify to him being told to be quiet and pointing to the monitor but obviously not to mention anything about community corrections.

The record does not reflect whether the informant was in the courtroom during the judge's remarks. During cross-examination of the informant, trial counsel questioned the informant about whether he and the Petitioner discussed the drug deals by telephone before the informant went to the Petitioner's house. The informant testified that no arrangements were made by telephone, although he might have called the Petitioner to let him know he was on his way. The following exchange then took place:

> Q.   With no phone call ahead of time to even know that he was home.
>
> A.   Terry Sanders had to be home.
>
> Q.   He had to be home?
>
> A.   He was on community corrections.

In the Petitioner's appeal of the convictions, this court determined that the trial court did not abuse its discretion in denying a mistrial after the informant testified about the Petitioner's being on community corrections. This court also determined that the court did not err in denying the motion for a new trial based upon the discovery after the trial that a juror's sister was the community corrections program director. This court concluded that the issue regarding trial counsel's legal representation of a juror was waived because it was not raised in a written motion for a new trial but that in any event, no plain error existed. *See State v. Terry Sanders*, No. M2011-00426-CCA-R3-CD, 2012 WL 5948885 (Tenn. Crim. App. Nov. 15, 2012), *perm. app. denied* (Tenn. Mar. 5, 2013).

**Post-Conviction Proceedings**

Assistant District Attorney General Craig Monsue, the prosecutor at the trial, testified that on the morning of the second trial, he counseled the confidential informant not to testify about the Petitioner's being on community corrections. He said that when he questioned the

informant on direct examination, though, he thought the informant was about to say something about the Petitioner's being on community corrections, and he directed the informant's testimony to other matters.

The prosecutor testified that his standard practice was to question prospective jurors to discover bias or prejudice. He said he typically questioned them about whether they knew or had been represented by defense counsel or had friends or family who were represented by defense counsel.

Cynthia Camp, a juror at the trial, testified that her sister, April Clark, was a probation officer. She thought Ms. Clark was the community corrections program director. She said that she did not know the identity of Ms. Clark's clients. She said they discussed family, not Ms. Clark's employment, when they spent time together. Ms. Camp said she knew before the trial that ankle monitors were worn by people on house arrest, but she did not say she knew this because of any conversation with Ms. Clark.

Ms. Camp recalled the trial judge's instruction to disregard testimony of the Petitioner's being on community corrections. She said the judge's curative instruction had the intended effect and did not bring more attention to the evidence. She thought she was able to follow the instruction.

Ms. Camp testified that before the trial, Ms. Clark asked an attorney to assist Ms. Camp with a civil matter by writing a letter. Ms. Camp did not know the attorney's name at the time and did not find out until after the trial that trial counsel had been the attorney who had written the letter. She did not recall requesting to speak with trial counsel after the verdict was returned.

Trial counsel testified that his practice was almost exclusively criminal defense and that he had practiced for thirty-two years. He said that relative to the Petitioner's case, discrediting the confidential informant was the only viable defense. He said the Petitioner could not be heard on the recordings of the transactions. He wanted to show that the informant fabricated the transactions in order to make money from successful buys.

Trial counsel testified that the Petitioner called him and that he visited the Petitioner at the jail a couple of times. He did not recall how many times he visited the Petitioner between the first and second trials but said the trial strategy did not change. He recalled questioning the officers about whether the informant could have hidden the drugs the informant claimed to have purchased from the Petitioner.

Trial counsel testified that he did not think the Petitioner had a fair trial after the confidential informant testified about the Petitioner's being on community corrections. He said that despite the court reporter's transcribing his statement as a question, he had repeated what the informant said, not asked a question. He did not think the informant's testimony was responsive. He said his style was not to be so aggressive as to cause a witness to disregard a court's limiting instructions. He said he requested a mistrial and a curative instruction.

Trial counsel testified that after the verdict was returned, someone told him a juror wanted to speak with him. He said he went to the clerk's office and met Ms. Camp, who introduced herself as Ms. Clark's sister. He said Ms. Camp connected his name as being that of the attorney who helped her. He said he never met Ms. Camp before the trial and wrote the letter on Ms. Camp's behalf at Ms. Clark's request. He thought his representation of Ms. Camp in an unrelated matter was insignificant. He thought Ms. Camp's familial relationship with the community corrections program director was significant, and he raised the issue on appeal. He said he raised the issue of his representing Ms. Camp orally but not in his written motion for a new trial. He acknowledged that this court concluded the issue was waived because it was not raised in a written motion. He did not know why he did not subpoena Ms. Camp for any post-trial hearings and said he probably should have, although he did not think it would have made a difference.

Trial counsel testified that he thought a fair and impartial jury was selected. He said the Petitioner was well known in the community, and he wanted jurors who knew nothing about the Petitioner. He would not have questioned the prospective jurors about probation or community corrections because he would not have wanted them to assume the Petitioner was subject to supervision.

Regarding the appellate record, trial counsel thought the delay in transcript preparation was due to a payment issue. He acknowledged that completing the appellate record was difficult in this case but said it was completed eventually.

Trial counsel did not recall if he considered whether the trial judge had a conflict of interest because the judge had previously prosecuted the Petitioner in other matters. He did not think he knew the judge had prosecuted the Petitioner. He did not recall if the Petitioner wanted him to raise an issue regarding a conflict. He said that he had raised a similar issue in another case and that this court concluded that no conflict existed. He did not think the trial judge had any bias or prejudice relative to the Petitioner.

Trial counsel did not know why two identical presentence reports were filed or why they were not signed. He said his policy was not to have a client give a statement for the "Defendant's Version" section of the report unless counsel was present. He said he was unconcerned about the presentence report's listing the Petitioner's juvenile adjudications. He said he knew from his experience in the judge's courtroom that the Petitioner would receive minimum consecutive sentences. He said consecutive sentences were required because the Petitioner was on community corrections when he committed the offenses.

The Petitioner did not testify in support of his allegations. The State did not offer proof. After receiving the evidence, the post-conviction court took the matter under advisement and later filed a detailed written order denying relief. This appeal followed.

## Analysis

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* at § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I

The Petitioner contends that the trial court abused its discretion in denying his motion for a mistrial after the confidential informant testified about the Petitioner's being on community corrections and that the admission of this testimony denied him due process of law. As the State notes, this court considered the trial court's ruling on the motion for a mistrial in the Petitioner's direct appeal. *See Terry Sanders*, 2012 WL 5948885, at *3 (addressing the merits of the issue in the Petitioner's direct appeal). The Post-Conviction Procedure Act provides as follows:

A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence.

T.C.A. § 40-30-106(h) (2012). Because the issue of whether a mistrial was required to protect the Petitioner's constitutional rights was fully litigated in the direct appeal, it has been previously determined and is not a proper basis for post-conviction relief. The post-conviction court did not err in denying relief.

## II

The Petitioner contends that trial counsel provided ineffective assistance in several respects. To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### A.    Pretrial Investigation

The Petitioner contends that trial counsel provided ineffective assistance because he failed to conduct any meaningful pretrial investigation. He argues generally that the

-6-

investigation was inadequate, but the only specific item he has identified is counsel's failure to require the State to prove that the substance the Petitioner allegedly sold the informant was cocaine. As the State notes, the Petitioner failed to offer proof at the post-conviction hearing that the substance was not cocaine. We note, as well, that the defense theory was that no sale took place. The post-conviction court found that the Petitioner failed to prove by clear and convincing evidence that counsel's investigation was inadequate. Upon review, we conclude that the evidence does not preponderate against the court's determination.

## B.    Communication with the Petitioner Before the Trial

The Petitioner contends that trial counsel provided ineffective assistance because he failed to communicate adequately with the Petitioner before the trial. To support his argument, he points to his sworn statement in the pro se petition that counsel only visited him once at the jail, that the jail visit was about a year before the trial, that counsel ignored his telephone calls, and that counsel failed to discuss strategy and to prepare him for the trial. Counsel testified that the Petitioner called him and that he visited the Petitioner at the jail a couple of times. He did not recall the extent of his communication with the Petitioner between the first and second trials, but he said the trial strategy did not change.

In denying relief, the post-conviction court noted the Petitioner's failure to testify at the hearing and found that he failed to prove his claims by clear and convincing evidence. The Petitioner's allegations in his petition are not a substitute for evidentiary proof. We note, as well, that post-conviction counsel's questioning of trial counsel about the extent of the communications was brief and that trial counsel's testimony conflicted with the Petitioner's factual allegations. By failing to offer any proof that trial counsel's pretrial communication with the Petitioner constituted deficient performance, the Petitioner failed to prove his ineffective assistance claim. The evidence does not preponderate against the court's determination.

## C.    <u>Jury Selection</u>

The Petitioner contends that trial counsel provided ineffective assistance by failing to screen the prospective jurors adequately, which resulted in an "unconstitutionally selected and empaneled" jury. He argues that counsel failed to discover that Ms. Camp knew before the trial that a person with an ankle monitor was on house arrest, which became significant when proof was introduced of the Petitioner's having an ankle monitor. He also argues that counsel failed to question the prospective jurors about friends or family who were involved in the criminal justice system. Counsel testified that he did not ask questions about probation or community corrections because doing so would have caused the jury to assume the Petitioner was subject to supervision. When he learned about Ms. Camp's family

relationship with Ms. Clark after the trial, he raised the issue in post-trial motions and on appeal. Although Ms. Camp testified that she knew about ankle monitors being involved in house arrest, she did not attribute this knowledge to her sister. She said she and Ms. Clark discussed family matters, not Ms. Clark's employment and clientele.

The post-conviction court found that trial counsel could reasonably assume, given the trial court's ruling about the inadmissibility of evidence of the Petitioner's being on community corrections, that an issue would not arise. The court also found that a prospective juror's relation to the community corrections director was not something that reasonably could have been anticipated. The court found that counsel did not provide ineffective assistance. Upon review, we conclude that the evidence does not preponderate against the post-conviction court's determination.

## D. <u>Recusal of the Trial Judge</u>

The Petitioner contends that trial counsel was ineffective because he failed to request the trial judge recuse himself based on the judge's previous prosecution of the Petitioner when the judge was an assistant district attorney general. After reviewing documents that had been offered as sentencing exhibits, trial counsel agreed at the post-conviction hearing that the judge had prosecuted the Petitioner previously during the judge's tenure as an assistant district attorney general and had presided as the judge in previous conviction and revocation proceedings involving the Petitioner. Counsel did not think he knew at the time of the trial that the judge had prosecuted the Petitioner. He said that when he had raised an issue in a similar case, the Court of Criminal Appeals determined that no conflict existed.

The record contains a 1992 judgment signed by George C. Sexton, attorney for the State, community corrections violations warrants from 2006 and 2007 signed by George Sexton as circuit court judge, and a 2008 amended community corrections violation warrant signed by George Sexton as circuit court judge. The record reflects that the present offenses occurred in 2007, and the Petitioner's trial was in 2010.

The post-conviction court found that the trial judge had been on the bench since 2003 and that the judge could not have been involved in prosecuting the current offenses, which occurred later. The court also found that the Petitioner failed to offer any evidence that the trial court was prejudiced against the Petitioner and that trial counsel could not be faulted for making a motion that would not have been granted.

The Petitioner argues, "Here there was no investigation of judicial bias; and therefore can be no assurances that the [Petitioner] was tried by an impartial Judge." In order to prevail on this claim, the Petitioner must show that trial counsel should have requested the

-8-

trial judge to recuse himself and that the Petitioner was prejudiced by the failure. However, he has cited no authority requiring automatic recusal of a judge who has previously prosecuted a defendant in another case or has presided as a judge in another case, nor has he shown any prejudice from the judge's past involvement as a judge in the Petitioner's other cases. *See, e.g.*, *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) ("Recusal has been held not to be required when nothing more was shown than that the trial judge had previously prosecuted a defendant on an unrelated case."); *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006) ("A trial judge is not disqualified because that judge has previously presided over legal proceedings involving the same defendant."). The evidence does not preponderate against the post-conviction court's conclusion that Petitioner failed to prove his claim by clear and convincing evidence.

## E.     Community Corrections Evidence

As a component of his ineffective assistance of counsel argument, the Petitioner contends in his brief that trial counsel and the trial judge denied him due process of law by inducing or allowing the jury to hear testimony about the Petitioner's being on community corrections. As we noted in section I, the trial court's ruling on the motion for a mistrial was reviewed by this court on direct appeal and cannot be relitigated in this post-conviction action. We will consider whether counsel provided ineffective assistance.

The post-conviction court found that trial counsel's question prompted the confidential informant's statement but that the Petitioner failed to show that counsel's performance was below the threshold of competent representation in a criminal case. A criminal defendant "is not entitled to perfect representation, only constitutionally adequate representation." *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). We note that after counsel inadvertently elicited the testimony, he requested, and the trial court gave, a curative instruction. As this court noted in the Petitioner's direct appeal, the jury was aware from other testimony that the Petitioner "shushed" the informant and pointed to the ankle monitor, and the testimony about the Petitioner's being on community corrections "'provided little new information to the jury.'" *Terry Sanders*, 2012 WL 5948885, at *3 (quoting *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002)). As this court held in the direct appeal, the informant's testimony did not create a manifest necessity for a mistrial. Although the question in the direct appeal was not an ineffective assistance of counsel claim, this court's conclusion in the direct appeal opinion regarding the mistrial issue is relevant to the question of whether the Petitioner was prejudiced by counsel's eliciting the testimony. We conclude that the evidence does not preponderate against the post-conviction court's determination that Petitioner failed to prove his claim by clear and convincing evidence.

**F.      Post-Trial Investigation of Jurors**

The Petitioner contends that trial counsel provided ineffective assistance by failing "to properly and thoroughly investigate the biases and deliberative behaviors of the improperly seated jurors post-trial." The only juror identified is Ms. Camp, and we will limit our consideration to counsel's actions or inactions relative to Ms. Camp. The Petitioner notes that counsel did not subpoena Ms. Camp for any post-trial hearings after discovering that Ms. Clark was her sister and that he had performed legal work for Ms. Camp. Counsel acknowledged he should have subpoenaed Ms. Camp, although he doubted the Petitioner would have received a new trial. As we have stated previously, Ms. Camp testified at the post-conviction hearing that she and Ms. Clark did not discuss Ms. Clark's work or clientele. Ms. Camp and counsel testified that his prior legal work for Ms. Camp was of a limited nature, came about through Ms. Clark, and occurred without counsel and Ms. Camp speaking or meeting before the Petitioner's trial.

Relative to trial counsel's post-trial efforts, the post-conviction court found that counsel raised post-trial issues regarding his prior legal work for Ms. Camp and her relationship with Ms. Clark. The court found that counsel's post-trial investigation was adequate. The evidence presented at the post-conviction hearing does not preponderate against the court's determination. The Petitioner did not present proof that counsel failed to discover, after the trial, the existence of anything that prevented Ms. Camp from serving as a fair and impartial juror or that her testimony in post-trial hearings would have resulted in his obtaining a new trial.

**G.      Completion of the Appellate Record**

The Petitioner contends that trial counsel was ineffective by failing to "suitably review and perfect" the record in the direct appeal to the Court of Criminal Appeals. He argues generally that "multiple problems" existed. He notes that an issue was raised orally in a motion for a new trial but was not submitted in writing and that this court could not properly consider it. Although his brief does not identify the issue he claims was not raised in writing, we presume that the Petitioner refers to the issue of counsel's previous attorney/client relationship with Ms. Camp.

As the post-conviction court noted, this court considered the issue of trial counsel's prior representation of Ms. Camp to have been waived in the direct appeal because it was not raised in the trial court in writing. *See id.* at *5-6. We acknowledge that counsel should have raised the issue in writing. The post-conviction court noted that despite the waiver, this court reviewed the issue for plain error and determined that none existed. *See id.* at *6. The post-conviction court found that the Petitioner failed to show prejudice from counsel's failure to

-10-

raise the issue in writing and that he did not prove his ineffective assistance of counsel claim. The transcript of the motion for a new trial reflects that the trial court considered the issue on its merits when it was raised orally and that it denied relief. We conclude that the evidence does not preponderate against the post-conviction court's determination.

## H.      Receipt and Review of the Presentence Report

The Petitioner contends that trial counsel provided ineffective assistance by failing to ensure the Petitioner received and reviewed the presentence report before the sentencing hearing. We note, again, that the Petitioner did not testify at the sentencing hearing. Counsel could not specifically recall sending the presentence report to the Petitioner, but he assumed he did. Counsel said he discussed sentencing with the Petitioner and told the Petitioner he thought the trial court would impose a thirty-year sentence. Counsel said he anticipated that the court would impose minimum fifteen-year sentences and that the court would impose them consecutively. He said he discussed this with the Petitioner.

The post-conviction court found that the Petitioner failed to offer any proof that he did not receive his presentence report. In light of the Petitioner's failure to testify or offer other proof that he did not receive a copy of the presentence report and that trial counsel did not review it with him, we conclude that the record supports the court's determination.

The Petitioner has failed to establish ineffective assistance of counsel. He is not entitled to relief on this basis.

## III

The Petitioner contends that he was denied due process and a fair trial in the conviction proceedings because of cumulative errors. He cites the lack of a request for the trial judge to recuse himself, the lack of an investigation into judicial bias, inadequate review of the presentence report and its admission as evidence, the seating of a juror with particularized knowledge of community corrections, a juror's connection to trial counsel, the lack of a written motion for a new trial regarding the juror's connection to counsel, the failure to subpoena the juror for post-trial hearings, poor communication between counsel and the Petitioner, failure to litigate sentencing issues, and failure to perfect the appellate record. We note that no cumulative error issue was raised in the petition or amended petition, and no such issue was considered by the post-conviction court. This court will not consider post-conviction issues that are raised for the first time on appeal. *See, e.g.*, *Cone v. State*, 747 S.W.2d 353, 356 (Tenn. Crim. App. 1987); *see also* Tenn. R. Crim. P. 36(a) (stating that "relief may not be granted in contravention of the province of the trier of fact"). To the extent that the Petitioner raised these concerns individually in his petition, litigated

them at the hearing, and raised them in his brief to this court, we have addressed them previously.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE