# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 8, 2016

## PAUL DAVID CHILDS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-2874     Cheryl Blackburn, Judge**

_____

### No. M2015-00994-CCA-R3-PC – Filed April 28, 2016

_____

The Petitioner, Paul David Childs, appeals as of right from the Davidson County Criminal Court's dismissal of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance from his trial counsel. Specifically, the Petitioner alleges that trial counsel was ineffective (1) for failing to "adequately inform" the Petitioner about "his rights regarding a preliminary hearing" and failing to request a preliminary hearing; (2) for failing to impeach the victim with an alleged prior inconsistent statement; (3) for preventing the Petitioner from testifying at trial; (4) for failing to sufficiently prepare for the trial, failing to present any witnesses at trial, and pursuing a "highly questionable" trial strategy; and (5) for advising the Petitioner to waive his right to appeal his conviction. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

David Harris, Nashville, Tennessee (on appeal); and David M. Hopkins, Murfreesboro, Tennessee (at post-conviction hearing), for the appellant, Paul David Childs.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Glenn R. Funk, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On June 14, 2010, the Petitioner was convicted by a jury of sexual battery, a Class E felony. See Tenn. Code Ann. § 39-13-505. The facts underlying the Petitioner's conviction were as follows: On October 22, 2008, the Petitioner went to the emergency room at Saint Thomas Midtown Hospital in Nashville, Tennessee. The Petitioner complained of having suicidal thoughts. The victim, an employee of Mental Health Cooperative, was asked to evaluate the Petitioner. The Petitioner told the victim "that he was not suicidal or homicidal, but that he only wanted a certain prescription to be written for him."

The victim informed the Petitioner that she would arrange for him to see a mental health doctor. As the victim attempted to leave the Petitioner's hospital room, the Petitioner "jumped" at her and "wrapped his arms around [her] in a bear hug and forcibly grasped her buttocks." The Petitioner told the victim that he could "use a good f--king" as he touched her buttocks. The victim "pushed the [Petitioner] away from her and fled" the room. She reported the incident to hospital security, and the Petitioner was escorted out of the hospital.

The Petitioner elected not to testify at trial. The trial court questioned the Petitioner about his decision.[1] The trial court asked the Petitioner if he had discussed the decision with trial counsel, and the Petitioner responded that he had. The trial court informed the Petitioner that "ultimately" he had to make the decision, and the Petitioner informed the trial court that he had decided not to testify. The Petitioner also signed a written waiver of his right to testify.

After the Petitioner's jury trial, he provided the following statement to the presentence investigating officer:

> I am guilty of sexual battery. I touched someone inappropriately without their consent and frighted [sic] her [emotionally]. I am sorry and remorseful. However, I realize an apology is not enough. [Whether] or not I'm granted probation, I must become a better person and a better citizen. With support from church, family and friends, A.A., mental health professionals and others. As for reason, I'm not sure why I acted this way. Very possibly from being angry and frustrated. Not [controlling] my emotions.

---

[1] In Momon v. State, 18 S.W.3d 152 (Tenn. 1999), our supreme court outlined a prophylactic procedure designed to insure that a defendant's waiver of his right to testify is voluntary, knowing, and intelligent. See Mobley v. State, 397 S.W.3d 70, 90-91 (Tenn. 2013). Under the Momon procedure, defense counsel should be the one to question the defendant, and the trial court should only question the defendant "when defense counsel fails to adequately obtain a waiver." State v. Rimmer, 250 S.W.3d 12, 28 n.4 (Tenn. 2008).

On August 31, 2010, trial counsel announced to the trial court that the State had agreed to a sentence of two years to be served on probation. After questioning the Petitioner about whether or not he understood that by accepting the State's offer he was waiving his right to a full sentencing hearing, the trial court imposed the agreed upon sentence. The trial court then asked about scheduling the motion for new trial hearing. At that point, trial counsel stated that the Petitioner was "going to discuss that with his sister," who happened to be an attorney. The trial court informed trial counsel that the Petitioner would have to file a written waiver if he chose to waive his right to appeal his conviction and informed the Petitioner that he had to make the decision within thirty days. The Petitioner subsequently signed and filed a written waiver of his right to appeal.

On August 15, 2011, the Petitioner filed a timely pro se petition for post-conviction relief alleging that trial counsel was ineffective for waiving the preliminary hearing without the Petitioner's "signed consent" and that there was newly discovered evidence which contradicted the victim's testimony at trial. The post-conviction court summarily dismissed the petition on the basis that it "failed to provide any factual grounds in support of his claims for relief." Paul David Childs v. State, No. M2011-02560-CCA-R3-PC, 2012 WL 5947379, at *1 (Tenn. Crim. App. Nov. 15, 2012). This court reversed the post-conviction court's summary dismissal and remanded the case for the appointment of counsel and filing of an amended petition for post-conviction relief. Id. at *3.

On September 25, 2013, an amended petition was filed alleging that trial counsel was ineffective (1) "by failing to request a preliminary hearing"; (2) "by not presenting evidence of [the] Petitioner's innocence at trial"; (3) "by not preparing [the] Petitioner to testify in his own defense and by not calling him as a witness at trial"; and (4) "by advising [the] Petitioner to waive his right to appeal his conviction . . . and by not filing a motion for new trial." On February 12, 2014, the post-conviction court held an evidentiary hearing on this matter.

At the evidentiary hearing, the Petitioner testified that he first met trial counsel approximately two weeks after his arrest for roughly fifteen minutes. The Petitioner asserted that his next meeting with trial counsel was prior to a court appearance, and at that meeting trial counsel explained a "possible plea agreement" to him where he would plead "to a felony assault instead of the sexual battery." However, the Petitioner stated that trial counsel returned a short time later and stated that "there was a problem" with the plea agreement because the victim "had not agreed to it somehow."

The Petitioner testified that he remained in custody for thirty-five days until he made bond. The Petitioner recalled that he did not have a preliminary hearing and testified that he could not recall trial counsel having "any discussions with [him] about the fact that [he] could have a preliminary hearing." The Petitioner claimed that he only

learned about his right to a preliminary hearing later, after his "sister pointed it out to" him. The Petitioner testified that he would have insisted on a preliminary hearing had he known of his right to the proceeding so that he could have presented his "side of the story."

The Petitioner claimed that after he was released on bond he only met with trial counsel "three times" prior to his trial with each meeting lasting thirty or forty-five minutes. The Petitioner admitted that trial counsel reviewed with him the victim's statement, the sexual battery statute, and the discovery process. The Petitioner testified that he could not recall if trial counsel provided him with a copy of the discovery materials.

The Petitioner claimed that after his conviction, trial counsel provided him with a copy of his medical records and other documents. The Petitioner testified that in these documents he saw "things like statements that were made that [he] didn't know of before the trial." The Petitioner claimed that the report filed by "the reporting police officer" stated that he had touched the victim's "lower back exterior" and that this contradicted the victim's testimony at trial that he had touched her buttocks. The Petitioner asserted that he had told trial counsel that he had actually touched the victim "briefly on her side, her waist" but that trial counsel never "point[ed] out that discrepancy" to the victim.

The Petitioner claimed that he told trial counsel prior to trial that he would be "comfortable taking the stand" and that trial counsel agreed to "meet at a later date and go over what questions would be asked and that sort of thing" but that the meeting never happened. The Petitioner asserted again that he wanted to testify at trial so that he could explain that he "did not touch the young lady inappropriately" and that "she was mistaken and . . . overreacted." The Petitioner further explained that he "briefly touched [the victim] around the waist" after she "pushed [his] arms downward" and "twisted her side . . . in order to get between [him] and the examining table."

In discussing his decision not to testify at trial, the Petitioner claimed that he did not realize his trial would actually occur on the scheduled trial date. Rather, the Petitioner testified that he thought it would be "like it [was] on [television]" and that they would "select a jury and then set a trial for couple of weeks after." The Petitioner asserted that he "thought [he] had time to convince [trial counsel] that [he] need[ed] to take the stand." The Petitioner claimed, however, that he decided not to testify after trial counsel "shushed" him during the victim's testimony. The Petitioner explained that he had "leaned over" to tell trial counsel that the victim's testimony was inconsistent with how he "remember[ed] it" and that trial counsel simply looked at him and "[p]ut his finger over his lips." The Petitioner asserted that this caused him to believe that trial counsel "was not going to support [him]."

-4-

The Petitioner claimed that on the day he was scheduled to have his sentencing hearing, trial counsel approached him and told him that the prosecutor would agree to a probationary sentence if the Petitioner was able to "pass a drug test." The Petitioner further claimed that trial counsel never discussed with him about his right to appeal his conviction and that trial counsel told him that "if [he] agreed to probation . . . [he] couldn't appeal." The Petitioner asserted that had he understood his right to appeal, he would have appealed his conviction.

On cross-examination, the Petitioner admitted that he did not know how having a preliminary hearing would have changed the outcome of his trial, but claimed that it would have made it "more feasible" for him to testify at trial. The police report of the incident was entered into evidence during cross-examination, and the Petitioner admitted that it stated that he had touched the victim's buttocks and was consistent with her trial testimony.

The Petitioner also admitted that he had stated that he was "guilty of sexual battery" but claimed that he only made the statement "after a probation officer" told him on "the day of [his] sentence" that he had to "admit guilt" "in order to be a candidate for probation." The Petitioner further claimed that the probation officer was a man named "Mr. Yates." However, the Petitioner was confronted with the fact that this statement was contained in his presentence report, which was compiled by investigating officer April Y. Lee prior to his scheduled sentencing hearing. The Petitioner admitted that trial counsel had advised him against making the statement.

The Petitioner claimed on cross-examination that he was "led to believe that [he] was going to testify" but that trial counsel had advised him against testifying a few days before trial and that he had "just [gone] by [trial counsel's] recommendation." The Petitioner further claimed that he leaned over to trial counsel when the victim testified "in hopes [that trial counsel] would change his mind and support [him]" but that trial counsel "shushed" him instead. The Petitioner claimed that he only told the trial court he did not want to testify because he "didn't think [he] had support from [his] attorney." However, the Petitioner admitted that trial counsel never "said that [he] couldn't testify" and that he simply felt that trial counsel "didn't support [him] in that notion."

On further cross-examination, the Petitioner claimed that no one told him "anything about an appeal until [he] met with [his] probation officer." However, the Petitioner admitted that he signed a waiver of appeal document dated August 31, 2010. The Petitioner claimed that trial counsel "showed [him] the document" and told him to sign it with "no explanation of an appeal." The Petitioner further claimed that trial counsel told him that if he signed the document he would "get probation" and that he signed it because whether he would get probation was "all [he was] thinking about" that day.

On redirect examination, the Petitioner was shown a "progress note" from his medical records and written by the victim. In the note, the victim stated that the Petitioner had "quickly got[ten] up from the bed, reached around [her], grabbed the lower back exterior and pressed up against [her]. He then said, 'I could use a good F'ing [sic].'" The victim further stated that she pushed the Petitioner away and left the room. The Petitioner testified that the progress note, rather than the police report, was the document he was thinking of during his earlier testimony and that he did not see the progress note until after his conviction when he was "meeting with the case manager regarding [his] mental health issues."

Trial counsel testified that he had been licensed to practice law since 1998 and that for much of that time his practice consisted "[c]ompletely" of criminal defense work. At the time he represented the Petitioner, trial counsel was an Assistant District Public Defender. Trial counsel was assisted by another Assistant District Public Defender and "an investigator who did some investigation." Trial counsel recalled that he met with the Petitioner within a few days of his arrest and that his initial goal "was to try to negotiate anything [he] could that would not put [the Petitioner] on the [sex offender] registry."

Trial counsel met with the prosecutor and the victim. Trial counsel recalled that the victim was open to the Petitioner pleading guilty to misdemeanor assault but that the prosecutor "insist[ed] that he plead to a felony." The prosecutor proposed a plea agreement where the Petitioner would plead guilty to reckless endangerment. Trial counsel testified that "there was no preliminary hearing" because they "did an information" to expedite the plea agreement. Trial counsel testified that the Petitioner "was fine with that," that the Petitioner's sister was "very involved," and that she was also "fine with that."

However, when the case advanced from General Sessions Court to Criminal Court, a new prosecutor was assigned to the case. The new prosecutor "did not think that the facts of this [case] met the statute [for] reckless endangerment. So the plea [agreement] basically fell apart." Trial counsel testified that, at that point, he discussed what had happened with the Petitioner and his sister, and they "discussed the pros and cons of having a preliminary hearing." Trial counsel recalled that he "explained to [the Petitioner] that [the case] was going to the grand jury anyway, [and] that the preliminary hearing would not stop the case from being prosecuted." Trial counsel worried that having a preliminary hearing would make the victim "more invested in prosecuting." Overall, trial counsel felt that a preliminary hearing could have been "strategically bad for" the Petitioner and that the Petitioner and his sister "all decided that [they] should probably not go there."

Trial counsel testified that he thought he met with the Petitioner more than just three times prior to trial. Trial counsel recalled that they discussed trial strategy and

whether the Petitioner would testify at trial during those meetings. Trial counsel believed that the victim would appear very credible and sympathetic to the jury. Trial counsel testified that his strategy was to convince the jury to acquit the Petitioner because the victim "chose to do this kind of work" and to work with "people [who] have issues." Trial counsel hoped that the jury would think that the Petitioner's actions did not rise to the level of sexual battery. Trial counsel admitted that "maybe this was a bad strategy."

Trial counsel also recalled that the Petitioner "made it clear that he did not want to testify, that he would not feel comfortable testifying." Trial counsel denied that he tried to convince the Petitioner not to testify shortly before trial. Trial counsel recalled discussing the issue with the Petitioner and that the Petitioner was clear that he did not want to testify at trial. Trial counsel stated that he agreed with the Petitioner's decision and thought it was the best course of action.

Trial counsel testified that he believed he received the Petitioner's medical records, including the progress note, after the Petitioner's conviction when he was "requesting all the records" to prepare for the sentencing hearing. Trial counsel also recalled giving the Petitioner "all of the discovery[,] . . . all of the records[,] and everything." Trial counsel noted that the description in the progress note differed from the victim's testimony and her other statements. However, trial counsel was not sure whether, if he had the document prior to trial, he would have used it to impeach the victim because she could have explained that she "was saying that in a nice way" and that he was afraid it "may have just reinforced" her testimony.

Trial counsel testified that he advised the Petitioner not to provide an account of the offense to the presentence report investigator. Trial counsel further testified that he did not recall the Petitioner's sentencing agreement requiring the Petitioner to waive his right to appeal. Trial counsel did recall talking to the Petitioner and the Petitioner's sister about an appeal. Trial counsel's opinion was that there was no basis for an appeal, but he advised the Petitioner that he "had an absolute right to appeal." Trial counsel recalled the Petitioner stating that he did not want to appeal his conviction. However, trial counsel admitted that his discussion of the issue with the Petitioner "probably was not as thorough as [it] should have been."

On April 28, 2015, the post-conviction court entered a written order dismissing the petition. With respect to the Petitioner's claim that trial counsel was ineffective for failing to request a preliminary hearing, the post-conviction court accredited the testimony of trial counsel that he discussed the issue with the Petitioner and the Petitioner's sister, that they all believed that there was no strategic value in conducting a preliminary hearing, and that the Petitioner agreed with the decision not to request a preliminary hearing. The post-conviction court further concluded that there was no

evidence that the Petitioner was prejudiced by the failure to request a preliminary hearing.

Regarding the Petitioner's claim that trial counsel was ineffective for failing to present evidence of the Petitioner's innocence, specifically the progress note, the post-conviction court concluded that the term "lower back exterior" was "essentially synonymous" with the term "buttocks"; therefore, the progress note did not contradict the victim's trial testimony. The post-conviction court further concluded that given the victim's numerous consistent statements, the progress note was unlikely to impeach her testimony.

Regarding the Petitioner's claim that trial counsel's actions forced him to waive his right to testify at trial, the post-conviction court accredited the testimony of trial counsel that the Petitioner did not want to testify at trial and had repeatedly expressed that to trial counsel. The post-conviction court further noted that the transcript of the Momon hearing and the written waiver of the right to testify signed by the Petitioner belied his claims.

Finally, regarding the Petitioner's claim that trial counsel was ineffective for advising the Petitioner to waive his right to appeal, the post-conviction court accredited the testimony of trial counsel that he discussed the issue with the Petitioner and the Petitioner's sister and that the Petitioner decided not to appeal his conviction. The post-conviction court also noted that the waiver of appeal document signed by the Petitioner and the transcript of the sentencing agreement belied the Petitioner's claims.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in dismissing his petition for post-conviction relief. Specifically, the Petitioner argues that trial counsel was ineffective (1) for failing to "adequately inform" him about "his rights regarding a preliminary hearing" and failing to request a preliminary hearing; (2) for failing to impeach the victim with an alleged prior inconsistent statement; (3) for preventing him from testifying at trial; (4) for failing to sufficiently prepare for the trial, failing to present any witnesses at trial, and pursuing a "highly questionable" trial strategy; and (5) for advising him to waive his right to appeal his conviction. The State responds that the post-conviction court did not err in dismissing the petition. The State further responds that the Petitioner has waived his claims that trial counsel insufficiently prepared for trial, did not present any witnesses at trial, and pursued a "high questionable" trial strategy by failing to include them in his petition or amended petition for post-conviction relief.

*I. Standard of Review*

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

*II. Preliminary Hearing*

In his post-conviction petitions, the Petitioner alleged that trial counsel was ineffective for failing to request a preliminary hearing. On appeal, the Petitioner alleges that trial counsel was ineffective for failing "to adequately inform [him] about his rights

regarding a preliminary hearing." Neither argument is persuasive. The post-conviction court accredited trial counsel's testimony that he discussed the preliminary hearing issue with the Petitioner and the Petitioner's sister and that they all came to the conclusion that they "should probably not go there" over the Petitioner's testimony that trial counsel never discussed the issue with him. Additionally, trial counsel testified that he believed "that the preliminary hearing would not stop the case from being prosecuted" and could have been "strategically bad for" the Petitioner. The Petitioner has not presented any evidence that the waiver of the preliminary hearing affected the outcome of his trial in any way. Accordingly, we conclude that the Petitioner has failed to demonstrate that he was prejudiced by trial counsel not requesting a preliminary hearing.

### III. Victim's Prior Statement

On appeal, the Petitioner argues that trial counsel was ineffective for failing to impeach the victim with her statement from the progress note that the Petitioner touched her "lower back exterior." However, the Petitioner has failed to establish his factual allegations regarding this claim by clear and convincing evidence. Trial counsel testified he was unsure if his office had received the document prior to trial. As such, the Petitioner has failed to establish that the document was available for use during his trial. Furthermore, the Petitioner has not established that he was prejudiced given that the victim could have easily explained that she meant buttocks when she wrote "lower back exterior" and that the rest of the statement was consistent with her trial testimony and other prior statements, including the fact that the Petitioner told her that he could "use a good f--king." Accordingly, we conclude that this issue is without merit.

### IV. Waiver of Right to Testify

The Petitioner argues on appeal that trial counsel prevented him from invoking his right to testify at trial. However, the post-conviction court accredited trial counsel's testimony that the Petitioner "made it clear that he did not want to testify, that he would not feel comfortable testifying." Furthermore, the transcript of the <u>Momon</u> hearing and his signature on a waiver of his right to testify both belie the Petitioner's claims that trial counsel somehow coerced him into not testifying at trial. Accordingly, we conclude that this issue is devoid of merit.

### V. Remaining Trial Issues

On appeal, the Petitioner argues that trial counsel was ineffective for failing to sufficiently prepare for the trial, failing to present any witnesses at trial, and pursuing a "highly questionable" trial strategy. However, these issues were not raised in the Petitioner's original pro se petition or his amended petition for post-conviction relief. "Issues raised for the first time on appeal are considered waived." <u>State v. Johnson</u>, 970

S.W.2d 500, 508 (Tenn. Crim. App. 1996).  Furthermore, issues not included in a petition for post-conviction relief may not be presented on appeal.  Cone v. State, 747 S.W.2d 353, 356 (Tenn. Crim. App. 1987).  Accordingly, these issues have been waived.

## *VI. Waiver of Right to Appeal*

The Petitioner argues on appeal that trial counsel was ineffective for advising him to waive his right to appeal his conviction.  A criminal defendant may knowingly and voluntarily waive his right to appeal.  Collins v. State, 670 S.W.2d 219, 221 (Tenn. 1984).  When a defendant choses to waive his right to appeal, counsel must file written waiver of appeal.  Tenn. R. Crim. P. 37(d)(2).  Here, the trial court accredited trial counsel's testimony that he discussed this issue with the Petitioner and the Petitioner's sister and that Petitioner knowingly and voluntarily waived his right to appeal.  Contrary to the Petitioner's testimony that he only signed the waiver document in order to be placed on probation, the transcript of the sentencing agreement is consistent with trial counsel's testimony that the issue was not brought up until after the Petitioner's sentence had been entered.  Furthermore, the Petitioner has failed to allege any potential arguments he would have pursued on appeal or otherwise demonstrate how he was prejudiced by the waiver.  Accordingly, we conclude that this issue has no merit.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-11-